STATE OF CONNECTICUT *v.* BERNARD WILLIAMS
(13917)

PETERS, C. J., BORDEN, BERDON, SANTANIELLO and DALY, Js.

Argued June 3—decision released August 10, 1993

*Robert S. Bello,* special public defender, with whom, on the brief, was *Christopher R. Bello,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *David I. Cohen,* senior assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, Bernard Williams, was convicted, after a jury trial, of one count of felony murder in violation of General Statutes § 53a-54c[1] and sentenced to a term of imprisonment of sixty years. He appeals directly to this court pursuant to General Statutes § 51-199 (b) (3).[2] On appeal, the defendant

---

[1] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants. . . ."

[2] General Statutes § 51-199 (b) (3) provides: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years."

claims that the trial court improperly: (1) refused to grant his motion for a new trial based upon the failure adequately to reconstruct the testimony contained in a missing trial transcript; (2) allowed the state to introduce into evidence a videotape of the crime scene; and (3) failed to suppress certain statements made by him to police officers. We affirm.

The jury could reasonably have found the following facts. On the evening of June 6, 1988, the victim, who had parked her car in the Bloomingdale's parking garage in Stamford, had been shopping at Bloomingdale's. At approximately 7 p.m., a shopper returned to the garage and discovered the victim lying facedown in a pool of blood near the open trunk of the victim's car. An autopsy revealed that she had bled to death as a result of five stab wounds about the neck region.

The police secured and searched the crime scene. The victim's recent purchases, purse and watch were not found in the immediate area or in her car. The police found a silver colored watchband extension pin near the perimeter of the crime scene. The police took black and white photographs and made a videotape of the crime scene.

The following day, a Bloomingdale's employee found, in one of the boys' dressing rooms, a shopping bag containing the victim's purse and the items purchased by her on the previous evening. Stains on these items contained blood that was consistent with the victim's blood type.

On the evening of the murder, the defendant, on four separate occasions, told acquaintances that: (1) he had done something at Bloomingdale's that he should not have done; (2) he had killed somebody at Bloomingdale's; (3) he had done something to a woman and had gotten money and a watch from her; and (4) he had killed a woman in the parking lot at Bloomingdale's.

The defendant also showed two of these acquaintances a watch matching the description of the victim's watch. One acquaintance noted that the side of the watchband was broken where the watchband connected to the face and that there was a red spot on the watch. Several days after the murder, the defendant had a second conversation with one of his acquaintances during which he described the murder in great detail.

I

The defendant first claims that the trial court improperly denied his motion for a new trial that was based upon the failure adequately to reconstruct the testimony contained in a missing trial transcript. We disagree.

On March 15, 1990, the defendant requested a copy of the trial transcript. In the late fall of 1991, the court monitor informed the defendant that two tapes, containing the trial proceedings of the afternoon of October 31, 1989, were missing. The defendant promptly filed a motion for a new trial on the ground that a complete transcript of the trial was unavailable. The missing tapes contained the testimony of witnesses who had been examined concerning the introduction by the state of various exhibits, including a diagram of the parking garage, photographs of the crime scene and a videotape of the crime scene.

On November 15, December 18 and December 20, 1991, the trial court conducted hearings in order to attempt to reconstruct the proceedings that were contained on the missing tapes. At the hearings, the witnesses who had testified on the afternoon of October 31, 1989, testified as to their recollection of the testimony they had given that afternoon. Notes taken by the court, counsel for both parties, the court monitor and other observers of the proceedings also became

part of the reconstructed record.[3] Each witness testified that the exhibits that were introduced at the hearings were accurate to the best of his or her recollection and, although each witness could not state with certainty that the exhibits included the entire testimony, each witness could recall nothing that had been omitted. The trial court held that "the record has been sufficiently reconstructed to allow meaningful and effective appellate review" and denied the defendant's motion for a new trial.

The absence of a portion of the trial transcript does not mandate a new trial. A new trial is required only if "the proceedings cannot be sufficiently reconstructed to allow effective appellate review of the claims raised by the defendant." *State* v. *Vitale,* 190 Conn. 219, 223, 460 A.2d 961 (1983); see also *State* v. *Stafford,* 223 Kan. 62, 64, 573 P.2d 970 (1977); *Smith* v. *State,* 291 Md. 125, 137, 433 A.2d 1143 (1981); *Commonwealth* v. *Harris,* 376 Mass. 74, 77, 379 N.E.2d 1073 (1978); *Lopez* v. *State,* 105 Nev. 68, 76, 769 P.2d 1276 (1989); *People* v. *Glass,* 43 N.Y.2d 283, 286–87, 372 N.E.2d 24, 401 N.Y.S.2d 189 (1977). Although the state must furnish an indigent defendant with a trial record adequate to allow meaningful review of his claims; *Draper* v. *Washington,* 372 U.S. 487, 499, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963); the state is not required to furnish a complete verbatim transcript. *Mayer* v. *Chicago,* 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971).

---

[3] Eight exhibits were introduced into evidence at the hearings: the trial court clerk's log indicating the time frames within which the witnesses had testified and the exhibits that had been entered into evidence; a transcript of questions written down by the court monitor while she was recording the proceedings with answers extracted from the state's notes; an additional copy of the transcript of the handwritten questions from the court monitor, without answers; the defense counsel's notes; the trial court's notes; the assistant state's attorney's notes; the notes of an inspector who was employed by the state; and the notes taken by the victim's son while he was observing the proceedings.

Possible substitutes include "[a] statement of facts agreed to by both sides, [or] a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes . . . ." *Draper* v. *Washington,* supra, 495.

The sufficiency of a transcript to enable the appellate courts to review the issues on appeal is a matter of fact, because the trial court is in the best position to determine whether the reconstructed record adequately reflects what occurred at the trial. An appellate court should affirm a trial court's finding that the reconstructed record was sufficient unless the appellate court finds that the trial court's determination was "clearly erroneous." *United States* v. *Carrillo,* 902 F.2d 1405, 1410 (9th Cir. 1990).

In determining whether a reconstructed record is sufficient, the trial court considers various factors, including the nature of the case, the claim of error advanced by the defendant, the availability of witnesses and exhibits from the original trial, the length of time that has passed, the length of the missing portion of the record and whether the defendant is represented by different counsel on appeal. See, e.g., *Commonwealth* v. *Harris,* supra, 78–79 (adequate opportunity to reconstruct entire trial transcript because trial was eighteen months earlier, trial judge and both counsel available, all witnesses and exhibits available and summaries of arguments and testimony existed); *Lopez* v. *State,* supra (one day's transcript containing the testimony of six witnesses could be adequately reconstructed from notes of two state's attorneys and two courtroom observers even though no notes included any objections by the defendant); *People* v. *King,* 160 App. Div. 531, 532, 554 N.Y.S.2d 517, appeal denied, 76 N.Y.2d 847, 559 N.E.2d 1291, 560 N.Y.S.2d 132 (1990) (reconstructed

record of state's case based on notes of trial court and prosecutor's testimony valid even though witnesses were not called to testify at hearing).

In the case presently before this court, the trial court did everything possible to reconstruct the record. The trial court incorporated into the reconstructed record its notes, the log of the courtroom clerk and the notes of the courtroom monitor, the notes of both counsel and the notes of two courtroom observers. In addition, the witnesses who had testified on the afternoon of October 31, 1989, were called to testify as to their recollection of the testimony they had given that afternoon. In its memorandum of decision on the defendant's motion for a new trial, the trial court stated that "this court is satisfied that the record has been sufficiently reconstructed so as to provide the defendant with a near perfect record with which to pursue his appeal." This determination of the trial court was not clearly erroneous.

The defendant, relying on two Wisconsin cases, claims that the reconstructed record must be adequate beyond a reasonable doubt.[4] Most jurisdictions, however, require only that the reconstructed record afford the defendant effective appellate review. *State* v. *Vitale,* supra; see, e.g., *Bell* v. *State,* 296 Ark. 458, 463,

---

[4] The Wisconsin Appellate Court stated: "In determining whether the trial court can resolve the dispute between the parties, the trial court must be satisfied to the same level of proof as required during the trial stage. In other words, in a criminal matter, the trial court must be satisfied *beyond a reasonable doubt* that the missing testimony has been properly reconstructed." (Emphasis in original.) *State* v. *DeLeon,* 127 Wis. 2d 74, 82, 377 N.W.2d 635 (1985). In *DeLeon,* fifteen minutes of testimony, including the testimony of a social worker, was missing. One of the defendant's claims on appeal was ineffective assistance of counsel regarding the examination of the social worker. Id., 77.

In *State* v. *Perry,* 136 Wis. 2d 92, 95–96, 401 N.W.2d 748 (1987), a significant portion of the final two days of trial, including the entire testimony of two witnesses and portions of the testimony of five other witnesses, was missing. The Wisconsin Supreme Court stated: "*DeLeon* emphasizes that

757 S.W.2d 937 (1988) (reconstructed record must be "adequate to inform [court] of what transpired at . . . trial"); *Cole* v. *United States,* 478 A.2d 277, 280–81 (D.C. App. 1984) (record must be sufficient to permit meaningful appellate review); *Craig* v. *State,* 510 So. 2d 857, 861 (Fla. 1987) (reconstruction must be "reasonably accurate"); *State* v. *Stafford,* supra, 64 (reconstructed record must afford effective appellate review); *Lopez* v. *State,* supra, 76, 86 (reconstructed record must be adequate for court to perform meaningful appellate review; defendant must demonstrate that reconstructed transcript "is materially less than essentially complete and accurate"); *State* v. *Jonas,* 793 P.2d 902, 910 (Utah App. 1990) (record must be "functionally adequate for review").

Additionally, most jurisdictions hold that before a defendant can establish that he is entitled to a new trial on the ground that the reconstructed record is inadequate to review his claims, he must demonstrate specific prejudice that results from having to address his claims on appeal with the reconstructed record. See, e.g., *Bell* v. *State,* supra, 463 (defendant must demonstrate "prejudice resulting from the state of the record"); *State* v. *Wright,* 97 Idaho 229, 231, 542 P.2d 63 (1975) (defendant must demonstrate "specific prejudice resulting from" failure to reconstruct record); *Simpson* v. *Commonwealth,* 759 S.W.2d 224, 228 (Ky. 1988) (showing of "prejudicial error" required); *Smith* v.

---

this procedure does not allow for speculation, but that the transcript must be established in accordance with the burden of proof required in the case, i.e., in a criminal case, beyond a reasonable doubt." Id., 102.

In both *DeLeon* and *Perry,* the missing testimony concerned whether the defendant had committed the crime with which he had been charged. The testimony did not establish a foundation for the introduction of evidence of the crime scene. The defendant has not provided, nor has our research revealed, any case in which a court has applied the "beyond a reasonable doubt standard" to the type of testimony that has been reconstructed in the present case.

*State,* supra, 135 ("defects must be of a prejudicial character"); *Commonwealth* v. *Chatman,* 10 Mass. App. 228, 232, 406 N.E.2d 1037 (1980) (defendant must "come forward with articulable claims [by] which the reconstruction may be judged"); *State* v. *Borden,* 605 S.W.2d 88, 92 (Mo. 1980) (defendant must demonstrate prejudice); *State* v. *Dupris,* 373 N.W.2d 446, 449 (S.D. 1985) (appellant must show "specific error or prejudice" resulting from failure to record entire proceedings of trial); *State* v. *Helmick,* 169 W. Va. 94, 100, 286 S.E.2d 245 (1982) (defendant must demonstrate error or prejudice that has resulted from and is specifically related to the missing portion of the record); but see *Van White* v. *State,* 752 P.2d 814, 821 (Okla. Crim. 1988) (complete stenographic record required in all capital proceedings).

The defendant has identified no specific claim of error that the court will be unable effectively to review on the basis of the reconstructed record. The defendant claims that any objections he may have made to the introduction of exhibits and, in particular, to the introduction of the videotape are unavailable. The officer who had been questioned regarding the videotape recollected being asked by the defendant about breaks in the time superimposed on the videotape and the chain of custody of the videotape. As the trial court noted in its memorandum of decision, any concerns about tampering with the videotape can be resolved by comparing the tape to the photographs taken of the crime scene.

The defendant also claims that he has been prejudiced because the reconstructed record does not reflect any inflammatory remarks that may have been made that afternoon either by the witnesses or by courtroom observers. This claim is entirely speculative. The purpose of the reconstructed record is to enable the appellate court effectively to review identified claims of error; the record is not presumed to be "complete

enough to dissect in the hope of discovering hitherto unnoticed issues or errors." *Commonwealth* v. *Hunt,* 22 Mass. App. 932, 933, 493 N.E.2d 884 (1986). The reconstructed record in this case adequately presents for review the issue of the admissibility of the videotape, the only issue specifically identified by the defendant that is connected with the videotape. The trial court, therefore, properly denied the defendant's motion for a new trial on the ground that the reconstructed record was sufficient to allow meaningful and effective appellate review.

## II

The defendant next claims that the trial court improperly allowed the state to introduce a videotape of the crime scene into evidence because the probative value of the videotape was outweighed by its prejudicial impact on the jury. We disagree.

At approximately 7:45 p.m. on June 6, 1988, one of the police officers arrived at the crime scene with a video camera. The officer was instructed to videotape the crime scene, beginning outside the parking garage, proceeding inside and ending at the location of the body. By the time the officer reached the location of the body, the medical examiner had turned the body over to a faceup position. The videotape, therefore, showed the body in the faceup position, rather than the facedown position in which it had been found.

The defendant contends that the changed position of the body in the videotape created an inaccurate portrayal of the crime scene and "highlighted the gruesomeness of the crime." Although the defendant emphasizes that the videotape should have been excluded as excessively prejudicial, that claim is best addressed by first reviewing the reasons why photographic evidence is admissible.

This court has consistently held that "photographic evidence is admissible where the photograph has 'a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. Note, 73 A.L.R.2d 769, 787.' *State* v. *DeJesus,* [194 Conn. 376, 381, 481 A.2d 1277 (1984)]. There is no requirement in this state that a potentially inflammatory photograph be essential to the state's case in order for it to be admissible; rather, 'the test for determining the admissibility of the challenged evidence is relevancy and not necessity. *State* v. *Piskorski,* 177 Conn. 677, 701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).' *State* v. *Haskins,* 188 Conn. 432, 453, 450 A.2d 828 (1982)." *State* v. *Doehrer,* 200 Conn. 642, 649, 513 A.2d 58 (1986).

A potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury. *State* v. *Doehrer,* supra; *State* v. *DeJesus,* supra, 382; *State* v. *Haskins,* supra, 452–53. The determination of the trial court will not be disturbed unless the trial court has abused its discretion. *State* v. *DeJesus,* supra; *State* v. *Piskorski,* supra, 701.

After viewing both the black and white photographs and the videotape, the trial court stated that the videotape was the most accurate, truthful and representative evidence of the crime scene. The trial court did not find the videotape so inflammatory that it would unduly prejudice the defendant and influence the jury's ultimate decision. The court also stated that any inaccuracy in the videotape resulting from movement of the body went to the weight given by the jury to the videotape, not to the admissibility of the videotape. "[T]he prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove

every essential element of the crime by the most convincing evidence it is able to produce." *State* v. *Piskorski,* supra, 701–702. Accordingly, we conclude that the trial court did not abuse its discretion by allowing the videotape into evidence.

## III

Finally, the defendant claims that the trial court improperly denied his motion to suppress certain statements made by him to police officers. The defendant claims that the statements were made during a custodial interrogation without the benefit of *Miranda*[5] warnings. We disagree.

"Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona,* [384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]. Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' *Miranda* v. *Arizona,* supra; see *State* v. *Januszewski,* 182 Conn. 142, 158, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Despite this definition of custodial interrogation, '[w]hat constitutes police custody for purposes of the *Miranda* warnings is not always self-evident. One thing is clear: the *Miranda* court was concerned with interrogation that takes place in a police dominated environment containing "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda* v. *Arizona,* supra, 467.' *State* v. *Januszewski,* supra. In other

---

[5] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

words, 'police officers are not required to administer *Miranda* warnings to everyone whom they question.' *State* v. *Januszewski,* supra, 159." *State* v. *Brown,* 199 Conn. 47, 51–52, 505 A.2d 1225 (1986).

"The defendant had the initial burden of proving custodial interrogation. *United States* v. *Charles,* 738 F.2d 686, 692 (5th Cir. 1984); *State* v. *Doehrer,* [supra, 647]; *State* v. *Vitale,* [197 Conn. 396, 409, 497 A.2d 956 (1985)]. The trial court's determination that the defendant was not in custody is a finding of fact. *State* v. *Ostroski,* 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). That finding of fact by the trial court will not be overturned unless it is clearly erroneous. Id.; see Practice Book § 4061; *State* v. *Young,* 191 Conn. 636, 652, 469 A.2d 1189 (1983). We will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence. *State* v. *Toste,* 198 Conn. 573, 580, 504 A.2d 1036 (1986); *State* v. *Alexander,* 197 Conn. 180, 185, 496 A.2d 486 (1985)." *State* v. *Pittman,* 209 Conn. 596, 606, 553 A.2d 155 (1989).

The record includes the following facts. At approximately 10 p.m. on the evening of the murder, a police officer who had been working an overtime shift in plain clothes was asked to "work the streets" for information about the murder at the Bloomingdale's garage. The officer encountered an informant in a local pool hall. The informant told the officer that a man called "Blue" had been in the pool hall earlier that evening and had told the informant that he had done something at Bloomingdale's. The informant also provided the officer with a description of "Blue."

After receiving this information, the officer returned to the police station, changed into his uniform for his regular shift and returned to the same neighborhood

with his partner to follow up on the lead. Near the pool hall, the officers noticed an individual matching the description provided by the informant. The individual had the word "Blue" tattooed on his chest. At trial, this individual was identified as the defendant.

The officers parked their vehicle and approached the defendant on the crowded street. In response to their inquiry, the defendant agreed to answer their questions. At no point was the defendant frisked, nor did he indicate that he did not want to talk to the officers or that he wanted to leave. During the conversation, one officer stood a few feet in front of the defendant and asked him questions. The other officer stood about five feet away, behind and to the left of the defendant. With the defendant's consent, the officers used their flashlights to check the defendant's hands and clothing for signs of blood. After the conversation, described by one officer as a conversation between old friends, the officers thanked the defendant and left.

The trial court denied the defendant's motion to suppress any statements he made to the police on the night of the murder. The trial court stated: "I find, as a matter of fact, that the record is devoid of evidence that would allow me to conclude that Mr. Williams, or a reasonable person in his situation, would not have felt free to leave or walk away from that situation."

The defendant spoke to the police officers on a crowded street. He was friendly and responsive. The record contains no evidence that the defendant was threatened or coerced by the police. After carefully reviewing the record, we find no support for the defendant's claim that he was in custody. See, e.g., *State* v. *Rasmussen,* 225 Conn. 55, 77, 621 A.2d 728 (1993) (defendant who voluntarily accompanied state police to barracks and talked with them in conference room was not in custody); *State* v. *Brown,* supra, 53 (defend-

ant was not in custody even though officer drove police vehicle onto sidewalk within eight feet of defendant and carried portable radio when he left vehicle to speak to defendant).

The defendant also seeks review of this claim under article first, §§ 7 and 8, of the Connecticut constitution.[6] The "unlawful, forcible detention of a person *in the street*" constitutes a seizure under the state constitution. (Emphasis in original.) *State* v. *Oquendo,* 223 Conn. 635, 652, 613 A.2d 1300 (1992). "[W]hat starts out as a consensual encounter becomes a seizure if, on the basis of a show of authority by the police officer, a reasonable person in the defendant's position would have believed that he was not free to leave." Id., 653. As stated above, we agree with the determination of the trial court that the defendant was not seized; a reasonable person in the defendant's position would have felt free to leave at any point during the conversation with the police officers. The defendant, therefore, was not seized under article first, § 7, of the Connecticut constitution.

Additionally, we have held that *Miranda* warnings are independently required under article first, § 8, of the Connecticut constitution to the same extent that they are required under the federal constitution. *State* v. *Barrett,* 205 Conn. 437, 447, 534 A.2d 219 (1987). *Miranda* warnings, therefore, are required only for a custodial interrogation. We conclude that the defendant's claim also fails on state constitutional grounds.

Accordingly, we affirm the trial court's denial of the defendant's motion to suppress the statements he made

---

[6] The state argues that the defendant has provided no independent state constitutional analysis and that we should decline to review the claim on state constitutional grounds. Although the defendant has provided a less than extensive analysis, he has presented a claim under the state constitution and, accordingly, we will consider his claim.

to the police. Whether the defendant's claim is viewed under the federal or under the state constitution, the trial court's findings that there was no custodial interrogation was supported by the record and makes the defendant's suppression motion unsustainable.

The judgment is affirmed.

In this opinion the other justices concurred.