STATE OF CONNECTICUT *v.* JAMES DESLAURIER
(14845)

PETERS, C. J., CALLAHAN, BORDEN, NORCOTT and KATZ, Js.

Argued May 31—decision released August 2, 1994

*Paul D. Eschuk,* assistant public defender, for the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *Patricia A. Swords,*

state's attorney, and *Sandra Tullius,* assistant state's attorney, for the appellee (state).

KATZ, J. The defendant, James DesLaurier, was convicted after a jury trial of assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d,[1] and operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a.[2] The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment of the trial court. *State* v. *DesLaurier,* 32 Conn. App. 553, 574, 630 A.2d 119 (1993). We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court, limited to the issues of whether the Appellate Court correctly concluded that the trial court properly: (1) admitted into evidence a statement made by the

[1] General Statutes § 53a-60d provides: "ASSAULT IN THE SECOND DEGREE WITH A MOTOR VEHICLE: CLASS D FELONY. (a) A person is guilty of assault in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes serious physical injury to another person as a consequence of the effect of such liquor or drug.

"(b) Assault in the second degree with a motor vehicle is a class D felony and the court shall suspend the motor vehicle operator's license or nonresident operating privilege of any person found guilty under this section for one year."

[2] General Statutes § 14-227a provides in relevant part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

defendant to a police officer; and (2) denied the defendant's motion for a competency examination under General Statutes § 54-56d.[3] We affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On the afternoon of May 6, 1990, the defendant and his stepbrother, Richard Hinds, Jr., drove in the defendant's car to a pool hall in Springfield, Massachusetts, where they remained for several hours, steadily consuming beer. During their drive home from the pool hall, at approximately 2 a.m., the defendant and Hinds were involved in a one car accident on Route 83 in Somers. The evidence indicated that the defendant's car went out of control, skidded across the highway, crashed three times into metal guardrails, rolled over and came to a stop on an embankment off the road.

After the accident, emergency crews and Connecticut state trooper Tony Dostanko arrived separately at the scene. Upon his arrival, Dostanko observed the defendant and Hinds lying in the front seat of the car, with their bodies intertwined. Due to the position of the bodies, Dostanko was unable to discern who had been operating the car. While medical attendants extricated the defendant and Hinds from the car, the defend-

[3] The precise questions certified were: (1) "Was the Appellate Court correct in concluding that the statement made by the defendant to police officers Tony Dostanko and John Modica was admissible into evidence?" and (2) "Was the Appellate Court correct in deciding that the trial court properly denied the defendant's motion for a competency exam under General Statutes § 54-56d?" *State v. DesLaurier,* 227 Conn. 930, 632 A.2d 705 (1993).

The first issue, as we frame it herein, differs from the first certified issue in two respects. First, the certified issue improperly assumes that both Tony Dostanko and John Modica are police officers. In fact, Modica is the emergency room physician who was on duty when the defendant was admitted to the hospital. Second, the certified issue addresses the admissibility of the defendant's statement to Modica. The defendant, however, expressly conceded at oral argument and conceded by implication in his brief to this court that the first issue on certification concerns only the admissibility of the defendant's statement to Dostanko.

ant, who appeared intoxicated, was very aggressive and combative. He rejected medical attention, argued aggressively with the medical attendants, attempted to remove the neck brace and restraining belt that were attached to the body board used to remove him from the car, and manifested a desire to leave the accident scene.

Although Dostanko initially avoided interfering with the medical attendants' treatment of the defendant, he was eventually summoned by them to assist in calming the defendant. Dostanko responded by cautioning the defendant that "he should lie back and allow the medical personnel to do their job for his own safety." Additionally, Dostanko stayed close to the defendant and shouted at him as he was being placed into the ambulance.

Thereafter, Dostanko followed the ambulance as it transported the defendant and Hinds to Johnson Memorial Hospital. When Dostanko arrived at the hospital, the defendant and Hinds were in separate, adjoining emergency rooms. Dostanko observed that the defendant, who continued aggressively to reject medical attention, was injured. Additionally, Dostanko was told by hospital personnel that the defendant was "probably going to take off." Dostanko entered the defendant's room, identified himself to the defendant and asked him if he had been driving the car, to which the defendant replied "No." Dostanko next asked the same question of Hinds, who replied that "[the defendant] was driving." Dostanko returned to the defendant's room and told the defendant that Hinds had said that the defendant had been driving, to which the defendant replied "All right, I was [expletive] driving." Immediately thereafter, Dostanko placed the defendant under arrest and read him his *Miranda*[4] rights from a notice of rights form, which the defendant did not sign.

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At trial, the defendant's statement that he had been driving the car was admitted through Dostanko's testimony, over the defendant's objection. The Appellate Court upheld the validity of this ruling.

I

The defendant first claims that the Appellate Court improperly affirmed the trial court's denial of his motion to suppress the incriminating statement that he had made to Dostanko at the hospital, just prior to his arrest. Specifically, the defendant claims that Dostanko elicited the statement during custodial interrogation, without giving him the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We conclude that the Appellate Court properly determined that the defendant was not in custody when he made the statement. Accordingly, we conclude that the statement was not obtained by the police in derogation of the defendant's *Miranda* rights.[5]

" 'Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda:* (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. *Miranda* v. *Arizona,* [supra, 384 U.S. 444].' " *State* v. *Williams,* 227 Conn. 101, 112, 629 A.2d 402 (1993). "The term 'custodial interrogation' encompasses both of these requirements, and was defined by the *Miranda* court as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his free-

---

[5] Because the defendant has failed to challenge the admission of his statement as a violation of his rights under article first, § 8, of the state constitution, our analysis of the claimed violation rests on the fifth amendment to the United States constitution. See *State* v. *Joyner,* 225 Conn. 450, 458–59 n.4, 625 A.2d 791 (1993); *State* v. *Outlaw,* 216 Conn. 492, 501 n.6, 582 A.2d 751 (1990).

dom of action in any significant way.' [*Miranda* v. *Arizona,* supra, 444]." *State* v. *Januszewski,* 182 Conn. 142, 158, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). What constitutes custody for purposes of *Miranda* was recently reiterated by the United States Supreme Court in *Stansbury* v. *California,* U.S. , 114 S. Ct. 1526, 1528–29, 128 L. Ed. 2d 293 (1994): "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' *California* v. *Beheler,* 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520, 77 L. Ed. 2d 1275 (1983) (per curiam) (quoting [*Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977)])." Further, the United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. *Stansbury* v. *California,* supra, 1529; *Berkemer* v. *McCarty,* 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Thus, in determining whether *Miranda* rights are required, the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest. See *Stansbury* v. *California,* supra, 1529; 1 W. LaFave & J. Israel, Criminal Procedure (Sup. 1991) § 6.6, p. 105.

No definitive list of factors governs a determination of whether a reasonable person in the defendant's position would have believed that he or she was in custody. Because, however, the *Miranda* court expressed concern with protecting defendants against interrogations that take place in a "police-dominated atmosphere," containing "inherently compelling pressures which work to undermine the individual's will to resist and

to compel him to speak where he would not otherwise do so freely"; *Miranda* v. *Arizona,* supra, 384 U.S. 445, 467; circumstances relating to those kinds of concerns are highly relevant on the custody issue. See generally C. Whitebread & C. Slobogin, Criminal Procedure (3d Ed. 1993) § 16.03, pp. 385–91; 1 W. LaFave & J. Israel, Criminal Procedure (1984) § 6.6, pp. 494–99.

" 'The defendant had the initial burden of proving custodial interrogation. *United States* v. *Charles,* 738 F.2d 686, 692 (5th Cir. 1984); *State* v. *Doehrer,* [200 Conn. 642, 647, 513 A.2d 58 (1986)]; *State* v. *Vitale,* [197 Conn. 396, 409, 497 A.2d 956 (1985)]. The trial court's determination that the defendant was not in custody is a finding of fact. *State* v. *Ostroski,* 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). That finding of fact by the trial court will not be overturned unless it is clearly erroneous. Id.; see Practice Book § 4061; *State* v. *Young,* 191 Conn. 636, 652, 469 A.2d 1189 (1983). We will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence. *State* v. *Toste,* 198 Conn. 573, 580, 504 A.2d 1036 (1986); *State* v. *Alexander,* 197 Conn. 180, 185, 496 A.2d 486 (1985).' *State* v. *Pittman,* 209 Conn. 596, 606, 553 A.2d 155 (1989)." *State* v. *Williams,* supra, 227 Conn. 113.

Applying these principles to the facts of this case, we conclude that the trial court properly found that the defendant had failed to prove that he was in custody when Dostanko asked him if he had been driving the car when the accident occurred. For purposes of this claim, the defendant contends that his custody originated at the accident scene, continued during his ambulance ride to the hospital, and carried over to the questioning that took place at the hospital. In contrast, the state argues that the defendant was not in custody either at the accident scene or at the hospital. Rather,

the state contends that Dostanko merely acted for a medical purpose and in the interest of public safety at the accident scene. Additionally, the state argues that when Dostanko elicited the incriminating statement from the defendant at the hospital, the defendant had not been subjected to a formal arrest or restraint on his freedom of movement of the degree associated with a formal arrest. *Oregon* v. *Mathiason,* supra, 429 U.S. 495. We agree with the state.

We first consider the defendant's assertion that he was in custody at the accident scene. In support of this assertion, the defendant does not argue, and the record does not indicate, that Dostanko himself either physically restrained the defendant in any way or ordered the medical attendants to restrain him physically. The defendant also does not argue that Dostanko took advantage of an inherently coercive situation created by any physical restraint that the medical attendants may have asserted against him for purposes of his treatment.[6] See *Wilson* v. *Coon,* 808 F.2d 688, 689 (8th Cir. 1987) (*Miranda* might apply even if police officer questions suspect in inherently coercive situation created by ambulance attendants rather than law enforcement officers). Rather, the defendant argues solely that Dostanko's verbal communications to him and Dostanko's close physical presence near him as he was being placed into the ambulance subjected him to custody. We disagree and conclude that Dostanko acted solely for a medical purpose and in the interest of public safety. Accordingly, his conduct did not create a "police-dominated atmosphere" requiring *Miranda* warnings. *Miranda* v. *Arizona,* supra, 384 U.S. 445.

---

[6] The defendant states in his brief to this court that "the actions of any emergency or hospital worker, either at the scene of the accident or later at the hospital," are not relevant to the determination of whether he was in custody.

Despite the defendant's assertion to the contrary, Dostanko did not place him in custody by virtue of talking to, shouting at, or standing close to him. As already stated, the defendant was very aggressive, combative, appeared intoxicated, and was interfering with his medical treatment at the accident site. In the face of this behavior, Dostanko told the defendant that "he should lie back and allow the medical personnel to do their job *for his own safety.*" (Emphasis added.) Additionally, Dostanko's conduct as he was being placed into the ambulance was necessary and reasonable for insuring the defendant's physical well-being and, under the circumstances, would not be perceived by a reasonable person as creating an inherently coercive, police-dominated environment. Moreover, Dostanko's conduct occurred in public and in view of witnesses who were not police officers—the medical attendants—thereby "reduc[ing] the likelihood that [Dostanko would] use oppressive or abusive tactics and render[ing] the situation less 'police-dominated.'" *Wilson* v. *Coon,* supra, 808 F.2d 690.

Our review of the record thus discloses police conduct reasonably calculated to maintain the safety of everyone present at the accident site. Under the circumstances of this case, such conduct, in the presence of witnesses who were not police officers, would not have made a reasonable person in the defendant's position believe that he or she was subject to a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. See *Oregon* v. *Mathiason,* supra, 429 U.S. 495. The record, therefore, supports the trial court's determination that the defendant was not in custody at the scene of the accident.

Our consideration of the various factors surrounding Dostanko's questioning of the defendant in the emergency room persuades us that the defendant also was not in custody at the hospital. Again, Dostanko did

not physically restrain or confine the defendant in any way when questioning him. Additionally, Dostanko, who was the sole law enforcement officer present, questioned the defendant in the public surroundings of a hospital emergency room and in the presence of witnesses who were not police officers, namely medical staff. See *United States* v. *Griffin,* 922 F.2d 1343, 1352 (8th Cir. 1990) ("[o]fficers diminish the public character of, and assert their domination over, an interrogation site by removing a suspect from the presence of third persons who could lend moral support"); *Archer* v. *United States,* 393 F.2d 124, 125 (5th Cir. 1968) (statement that defendant made to agent of Federal Bureau of Investigation during interview that took place in familiar surrounding of her own place of business while her husband was present was admissible). There is no evidence indicating that the defendant was unable to converse with these other people, express annoyance or request assistance from them. Moreover, the duration of the questioning was momentary. Compare *United States* v. *Kennedy,* 573 F.2d 657, 660 (9th Cir. 1978) (custody when defendant interrogated for forty-five minutes), with *Allen* v. *United States,* 390 F.2d 476, 479 (D.C. Cir. 1968) (limited and brief inquiry made as part of an investigation not custody).

"Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer* v. *McCarty,* supra, 468 U.S. 437. In this case, we are persuaded that Dostanko's temporary questioning of the defendant in the public setting of a hospital did not create the type of inherently coercive, police-dominated atmosphere with which *Miranda* is concerned. We conclude, therefore, that the defendant was not taken into custody for the purposes of *Miranda* until Dostanko arrested him.

Consequently, the statement the defendant made to Dostanko prior to that point was properly admissible against him.

## II

The defendant next claims that the trial court improperly denied his motion for a competency examination under General Statutes § 54-56d,[7] in violation of his rights to due process under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[8] We disagree.

The following facts are relevant to the disposition of this claim. On January 18, 1991, the defendant's counsel filed a motion requesting an examination of the defendant's competency to stand trial. In support of the motion, the defendant's counsel stated that the

---

[7] General Statutes § 54-56d (formerly § 54-40) provides in relevant part: "COMPETENCY TO STAND TRIAL. (a) COMPETENCY REQUIRED. DEFINITION. A defendant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.

"(b) PRESUMPTION OF COMPETENCY. A defendant is presumed to be competent. The burden of proving that the defendant is not competent by clear and convincing evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) REQUEST FOR EXAMINATION. If at any time during a criminal proceeding it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

"(d) EXAMINATION OF DEFENDANT. REPORT. If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the superior court, there is probable cause to believe that the defendant has committed the crime for which he is charged, the court shall order an examination of the defendant as to his competency. . . ."

[8] Because the defendant fails to provide an independent analysis of the state constitutional claim, we limit our review to his federal constitutional claim. See footnote 5.

defendant had exhibited "irrational behavior" during prior discussions about possible plea bargain arrangements, the extent of a possible prison sentence and the possible results of a jury trial. Further, the defendant's counsel asserted that during a pretrial conference the previous day, the defendant had experienced difficulty forming sentences, comprehending the charges against him or understanding his relationship with the victim who is his stepbrother. The state concurred with the description of the defendant's behavior on the previous day.

The trial court thereafter canvassed the defendant, asking him specific questions about his educational background, past mental health, present understanding of the criminal proceedings and the potential consequences of his impending trial.[9] The trial court

[9] "The Court: Mr. DesLaurier, I'm going to ask you a few questions. I want to talk to you a little bit about the motion your attorney just made in your behalf. Can you tell me how far you've been in school?

"The Defendant: Eleventh grade.

"The Court: Are you able to read?

"The Defendant: Yes.

"The Court: Write?

"The Defendant: Yes.

"The Court: Have you ever been in any kind of a hospital for psychiatric reasons, anything like that?

"The Defendant: No.

"The Court: Do you understand what you're charged with here in this case? You're charged with operating under the influence, driving a motor vehicle under the influence of alcohol. Do you understand that charge?

"The Defendant: Basically.

"The Court: You're also charged in another count with assault in the second degree with a motor vehicle and that means that while you were driving a motor vehicle under the influence—and you said you basically understood that charge—that you caused an injury to someone else which resulted in serious physical injury to another person as a result of operating under the influence. That's the second count. Do you understand that charge?

"The Defendant: I don't really understand the consequences or—

"The Court: The consequences of a conviction mean you could be sentenced on the charge of assault with a motor vehicle to five years in prison.

concluded that the defendant had failed to make an adequate showing under § 54-56d,[10] and the Appellate Court affirmed that ruling.

That's the maximum penalty. That is the consequences if you are convicted of it. And on operating under the influence the maximum as a first offender is six months in jail and a five hundred dollar fine.

"The Defendant: I don't understand the plea bargain.

"The Court: You don't understand it?

"The Defendant: No. It's going on since May.

"The Court: I don't want to discuss the plea bargain. Your attorney discussed some offer the State made to you and it's your right to accept or reject it. Do you understand that?

"The Defendant: Yes.

"The Court: So they told you what they'd do if you pled guilty; they'd make a recommendation. Do you understand what the recommendation was?

"The Defendant: Bits and pieces.

"The Court: Well I assume they told you they'd recommend a certain period of time or a certain sentence, a certain sentence, a certain recommendation to be made. You heard that, right?

"The Defendant: Yes, I heard it, yes.

"The Court: What part don't you understand. What part is difficult for you to understand. Since you understand the charges, I just told you the maximum is five and a half years—you understand that, don't you?

"The Defendant: Yes.

"The Court: What they have told you is they made a plea bargain an offer if you wanted to accept it, they'd recommend less sentence than that I assume. Is that right?

"The Defendant: That's what they've been doing, but I don't understand. I can understand what you're telling me.

"The Court: Well that's all I want to know, is that you understand what we're telling you. You can accept it or reject it. That's your decision. You talked to your lawyer about the case I assume. You have had discussions with your lawyer about it."

The trial court stated: "Don't tell me what they were, but I assume that your lawyer talked to you about the evidence that's going to be—basically what's going to go on here. Do you understand that?

"The Defendant: I understand what you're telling me about the charges, but I don't understand why it's been taking so long and plea bargaining. I can understand you're going to give me five years.

"The Court: I'm saying what the maximum is.

"The Defendant: You're not sure.

"The Court: Well that's the maximum. I'm only telling you the maximum.

"The Defendant: I can understand the five years. You tell me max five years."

[10] The trial court stated: "Yes. Okay. I'm not satisfied that there has been an adequate showing that a 54-56d examination is appropriate. He seems

The defendant argues that the Appellate Court incorrectly affirmed the trial court's denial of the defendant's motion for a competency hearing under § 54-56d. Emphasizing the character of his behavior on the day prior to the § 54-56d motion and his monosyllabic responses to the trial court during the canvass, the defendant argues that this evidence required the trial court to grant his motion for a competency hearing. We reject this argument and conclude that the trial court properly exercised its discretion.

"General Statutes § 54-56d provides that a defendant shall not be tried, convicted or sentenced while incompetent and permits a competency hearing to be held whenever it appears that the defendant 'is unable to understand the proceedings against him or to assist in his own defense.' As a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes 'specific factual allegations that, if true, would constitute substantial evidence of mental impairment. *Sanders* v. *United States*, 373 U.S. 1, 21, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963). " 'Substantial evidence' is a term of art. 'Evidence' encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competency . . . ." *Moore* v. *United States*, 464

to understand the charges. He understands the penalty that he's facing. He understands there was a plea bargain. He rejects the plea bargain apparently which, of course, is his right under our procedure. And I think as far as I can determine he is able to proceed with the case. The request for a 54-56d examination is denied." We note that although the defendant now cites the canvass as evidence of his incompetency at trial, he never pointed the trial court to any of his responses to its questions as a basis for his challenge; nor did he contradict the trial court's characterization thereof.

F.2d 663, 666 (9th Cir. 1972). *State* v. *Watson*, [198 Conn. 598, 605, 504 A.2d 497 (1986)]; see *Pate* v. *Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); *de Kaplany* v. *Enomoto*, 540 F.2d 975, 982–83 (9th Cir. 1976), cert. denied, 429 U.S. 1075, 97 S. Ct. 815, 50 L. Ed. 2d 793 (1977); *People* v. *Pennington*, 66 Cal. 2d 508, 518, 426 P.2d 942, 58 Cal. Rptr. 374 (1967). The trial court should carefully weigh the need for a hearing in each case, but this is not to say that a hearing should be available on demand. The decision whether to grant a hearing requires the exercise of sound judicial discretion. *United States* v. *Hall*, 523 F.2d 665, 667 (2d Cir. 1975); *Riccardi* v. *United States*, 428 F. Sup. 1059, 1064–65 (E.D.N.Y.), aff'd, 573 F.2d 1294 (2d Cir. 1977). '[P]risoners are not entitled and need not be permitted to make bald charges of mental incompetency to stand trial for the purpose simply of obtaining an excursion from the penitentiary. . . . A balance must be struck between the practical and the theoretical, and this can best be done by the [trial court].' *United States* v. *Miranda*, [437 F.2d 1255, 1258 (2d Cir. 1971)], quoting *Nelms* v. *United States*, 318 F.2d 150, 154 (4th Cir. 1963)." *State* v. *Lloyd*, 199 Conn. 359, 365–66, 507 A.2d 992 (1986).

The trial court did not abuse its discretion by denying the defendant's motion for a competency hearing because it reasonably concluded that he had failed to raise a reasonable doubt about his competency. After defendant's counsel brought his § 54-56d motion, the trial court listened to the evidence concerning the defendant's recent conduct, potential communication problems and understanding of the criminal charges. The trial court considered the assertions of the defendant's counsel and solicited the opinion of the prosecutor. Finally, the trial court canvassed the defendant about his understanding of the proceedings against him,

his understanding of the plea bargain and his ability to communicate with his counsel and assist in his own defense.

As a result of its inquiry, the trial court reasonably could have found that the defendant: (1) did not suffer from any known or apparent mental illness or defect that would impair the defendant's ability to understand the criminal proceedings or to assist in his own defense; (2) possessed minimum communication skills such as the ability to read and write; (3) understood the basic charges against him and his rights to accept or reject a plea bargain; and (4) understood the consequences of accepting or rejecting a plea bargain. Further, the trial court reasonably could have concluded that the defendant's occasional response, "I don't understand," during the canvassing referred not to the defendant's comprehension of the substance of the proceedings, but only to his frustration about the apparently lengthy duration of the pretrial proceedings and the time necessary to strike a plea bargain with the state.

Equally important, this is not a case where the trial court disregarded psychiatric, medical or historical testimony relevant to the defendant's competency to stand trial. The defendant proffered no evidence to establish or suggest a sufficient pattern of behavior that would raise, in and of itself, a reasonable doubt about his competency. See *Drope* v. *Missouri*, 420 U.S. 162, 178–79, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (trial court required to give proper weight to defendant's recent attempt at suicide and spouse's testimony about defendant's history of disturbed mental state); *Pate* v. *Robinson*, supra, 383 U.S. 385–86 (trial court's decision not to grant competency hearing on its own motion improperly ignored testimony of defendant's history of "pronounced irrational behavior"); *United States* v. *Auen*, 846 F.2d 872, 878 (2d Cir. 1988) (consistent exhibition of "bizarre" behavior prior to and during trial requires

further competency hearing); cf. *State* v. *Watson,* supra, 198 Conn. 605–606 (unsubstantiated references to psychiatric treatment and medication fail to trigger *Pate* inquiry). Further, the preliminary hearing revealed nothing to indicate that the defendant was under the influence of potentially mind-altering medication or other drugs that might have undermined his competency to stand trial. See *State* v. *Gonzalez,* 205 Conn. 673, 687, 535 A.2d 345 (1987) (trial court properly ordered new competency examination after learning defendant had been given antipsychotic drug previous night). Instead, the defendant supported his motion exclusively with limited instances of his prior "irrational behavior" while meeting with his counsel, his apparent communication and comprehension difficulties during a pretrial conference on the prior day and the brevity of his responses during the canvassing. None of these, either alone or in combination, required the trial court to order a competency hearing.

Although we acknowledge the defendant's contention that the opinion of the defendant's counsel "is unquestionably a factor which should be considered," we note that the trial court need not accept it without question. *Drope* v. *Missouri,* supra, 420 U.S. 177 n.13. The trial court reasonably could have afforded little weight to the assertion of the defendant's counsel about the defendant's "irrational behavior" during a private conversation because his bare opinion, without any further detail about the date, duration, frequency or actual behavior involved in the conduct, presented only a legal conclusion about the defendant's competency to stand trial and failed to assert facts from which the trial court could make its own legal determination concerning the defendant's competency. Compare *United States* v. *Goines,* 988 F.2d 750, 782 (7th Cir.), cert. denied,    U.S.    , 114 S. Ct. 241, 126 L. Ed. 2d 195 (1993) (no abuse of discretion in denying competency hearing

where trial court personally observed defendant to be lucid and defense counsel failed to support allegations about defendant's competency with sufficient facts), with *United States* v. *Nichols,* 661 F. Sup. 507, 513 (W.D. Mich. 1987) (granting competency hearing based on defense counsel's "four-page, detailed affidavit" outlining prior instances of "bizarre" behavior and psychiatric problems). Thus, by not providing a sufficient description or explanation of the nature of the defendant's purported past irrationality, the observation of the defendant's counsel provided no reasonable basis for the trial court to disregard its own, in-court observations about the defendant's then *present* competency.[11] See *State* v. *Lloyd,* supra, 199 Conn. 366–67 (emphasizing defendant must assert grounds of claimed incompetency).

Moreover, the trial court reasonably could have discounted the value of the observations about the defendant's behavior on the prior day because the defendant failed to make specific factual allegations about how any earlier impairment "may have affected his competence *that day.*"[12] (Emphasis added.) Id.,

[11] We do not mean to suggest that the opinion of a defense attorney deserves no weight unless it is accompanied by some minimum amount of specific factual support. We only emphasize that the consideration to be afforded to a defense attorney's opinion of his client's competency, like all evidence of a defendant's competency to stand trial, necessarily increases with the greater number of facts presented from which the trial court may draw its own reasonable conclusion.

[12] While we emphasize that in deciding whether to order a General Statutes § 54-56d competency hearing, a trial court must focus on a defendant's *present* competency to stand trial and that evidence, including that of a defendant's past or current behavior, is relevant only to the extent that it bears on that present competency, we also must underscore that because competency focuses on a particular point in time, a defendant who is found to be competent at the outset of trial later may become incompetent. For that reason, a trial court must order a competency hearing at any time that facts arise to raise a reasonable doubt about the defendant's competency to continue with the trial. General Statutes § 54-56d. Thus, whenever a later motion alleges facts that sufficiently indicate that the

367; see also *United States* v. *Burns,* 811 F. Sup. 408, 416 (E.D. Wis. 1993) (defendant must show past mental infirmities "presently affect" competence). Consequently, the trial court was entitled to rely on its own observations of the defendant's responses during the canvassing, in light of his demeanor, tone, attitude and other expressive characteristics. See *State* v. *Watson,* supra, 198 Conn. 603–604; *State* v. *Janice,* 20 Conn. App. 212, 214, 565 A.2d 553, cert. denied, 213 Conn. 811, 568 A.2d 795 (1989). The trial court was in the best position to assess whether the defendant behaved rationally at that time. See *State* v. *Watson,* supra, 606–607 (emphasizing trial court's ability to test defendant's present competency).

The record establishes that the trial court considered the relevant evidence, personally evaluated the defendant's ability to understand the proceedings and reasonably concluded that the defendant was competent to stand trial. We therefore conclude that the trial court acted within its discretion in denying the defendant's motion for a competency examination.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

defendant may be incompetent, the trial court must revisit the issue of competency and consider all relevant evidence, including evidence presented during any earlier motions for a competency hearing. In this case, no motions were filed subsequent to the one presently in issue.