******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOEL DORT
(SC 19066)

Rogers, C. J., and Palmer, Zarella, Eveleigh and Espinosa, Js.

*Argued April 24—officially released December 30, 2014*

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michele Manning*, assistant state's attorney, for the appellant (state).

*Robert E. Byron*, assigned counsel, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The state appeals, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of the trial court convicting the defendant, Joel Dort, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2) and kidnapping in the first degree in violation of General Statutes § 53a-92 and ordering the trial court to conduct a hearing to determine whether a competency evaluation, as described in General Statutes § 54-56d (d),[1] is needed. See *State* v. *Dort*, 138 Conn. App. 401, 412, 51 A.3d 1186 (2012). On appeal, the state claims that: (1) the Appellate Court improperly determined that the trial court's "independent inquiry" into the defendant's request was inadequate, when that issue had not been raised or briefed by the parties; (2) assuming that it was proper for the Appellate Court to reach the issue, that court improperly determined that the trial court's inquiry into the defendant's request for a competency evaluation was inadequate; and (3) assuming that the Appellate Court properly determined that the trial court's inquiry was inadequate, it improperly determined that the proper remedy was to vacate the defendant's conviction and order a hearing to determine whether a competency evaluation was required. We affirm the judgment of the Appellate Court, albeit for different reasons.

The Appellate Court opinion provides the following relevant facts and procedural history. "The jury could have reasonably found the following facts. In 2009, the defendant was discharged from his position as a computer consultant for XL Capital, an insurance and reinsurance company in Stamford. Approximately four months after the termination of his employment, the defendant entered XL Capital without proper authorization and waited for the victim, one of his supervisors, in her office. The defendant asked the victim for his job back, and she informed him that the job had been outsourced. The victim asked the defendant to leave, and when he did not, she threatened to call security. The victim reached for her telephone to call for assistance, and the defendant grabbed the telephone out of her hand and pointed a gun at her. The victim tried to escape from the defendant by stepping toward the door, and the defendant crushed the victim's hand in the doorway, grabbed the victim by the throat and slammed her head against the office wall. The victim broke free and ran out of her office. The defendant left the building and was later arrested and charged in a substitute long form information with burglary in the first degree in violation of § 53a-101 (a) (2), kidnapping in the first degree in violation of § 53a-92 (a) (2) (C) and strangulation in the second degree in violation of General Statutes § 53a-64bb (a).

"Pursuant to . . . § 54-56d, the court on November

13, 2009, ordered an examination to determine if the defendant was competent to stand trial. After the examination was completed and memorialized in a report dated December 16, 2009, the parties stipulated before the court that the defendant was competent to stand trial.

"On June 23, 2010, the court granted the defendant's motion for a speedy trial and scheduled jury selection to commence the following day. At the beginning of jury selection on June 24, 2010, defense counsel brought to the court's attention his concerns regarding the defendant's competency to stand trial, and asked for another competency examination to be performed. The defendant's counsel stated: 'I have not had a recent chance to have a long discussion with [the defendant], but I have had chances yesterday and on the telephone and this morning, and just so the court's aware, he was evaluated, competency evaluated in or about the first months after the incidents that gave rise to these charges occurred.' At that time the court noted that a § 54-56d (d) examination had been ordered. Defense counsel continued to address the court: 'My understanding of the statute is that competency is not established forever. And that having been said, I know [the defendant] has had a competency evaluation, but there are things that he has said to me and clear-cut advice that, both on the record and off the record, he continues not to follow when I give it to him. And these are fundamental bits of advice, Judge, I might add. So, for example, don't talk to anybody about your case or be advised that you're not obliged to incriminate yourself by making incriminating statements. And nonetheless, that has, in my view, occurred. And my largest problem at this point is that in the period of one day, since yesterday, I've been asked questions and I've observed a behavior that leads me to believe that he will continue to have difficulty and an inability to effectively communicate with counsel in such a way that it will hinder my ability to defend him, especially with regard to his understanding of the case and the facts and conditions that existed at the time that he feels are relevant to his defense. And for that reason, I would request at this juncture that the court reexamine him for competency at this juncture.'

"In response, the court noted that a report had been filed approximately seven months previously that found the defendant competent to understand the charges against him and to assist in his defense. The court followed up by stating: 'And I'm hearing that there's disagreements over following the advice of counsel and perhaps tactical issues as to whether or not certain issues and statements might be relevant or not relevant. I'm not—I mean, that happens in many, many cases. What else do you have to offer to the court?' Counsel for the defendant responded: 'I've certainly been in those many types of cases where there's disagreements,

Judge. . . . And just for the record, I can represent as an officer of the court, there's a clear distinction between [disagreement] and what's going on here. There's a fundamental misunderstanding regarding what can be put forward as a defense in this case. There's a fundamental misunderstanding of the seriousness of the charges in light of the defense. It's not only a disagreement, it's a situation where, without disclosing private communications between attorney-client, I am led to believe—and I make this statement as an officer of the court, that attempting to extrapolate the relevant information from [the defendant] in order for me to go forward with his defense is virtually impossible.'

"In response, the court noted that defense counsel had met with [the defendant] on multiple occasions, and, yet, the first time the court heard of an issue of competency was when jury selection was to begin. Defense counsel agreed that that was a pertinent observation and then stated: 'I think that in formulating a view of a [defendant's] inability to assist at trial, one needs to take into account, A, I'm not a psychiatrist, I'm just giving you a layperson's analysis of the reasons for why I believe this. And, B, I don't think it's—I think it's uncontested that these things and the behavior that exhibits—that attracts the concern can crop up at any time. And in fact, I know there have been cases—I don't have them in front of me, where a defendant may even be ordered to be examined in the middle of the trial. . . . So, that having [been] said, in the last day [the defendant] has said things and not been able to field information between he and I that I think is necessary to his proper understanding and his ability to further instruct me. He's indicated to me that there are things that he has withheld because he was waiting for trial— I don't know what that means, of course, Judge. But the point is, I don't know that he is stable enough or he understands enough about the seriousness of these charges for me to move forward and have him assist me in his own defense. . . . You know, I've advised [the defendant] about the elements of these charges . . . that he faced last month or at the beginning of the trial, for example. And there's been things he's seized upon, including the fact that there's a weapon in this case or an alleged weapon in this, an alleged gun. And he's been informed that that's not whether the gun is operable or whether it's a rubber gun or it's made of wood—that does not constitute a defense. I cannot for the life of me extrapolate much more in the way of facts from him at this juncture.'

"After defense counsel concluded his argument, the court stated: 'I think the issue that's before the court is whether or not there's some substantial evidence that would give rise to a concern on the part of the court that the defendant is not competent at this time to proceed with trial. And I must say that I have not heard

that. What I've heard is that there are concerns about communications, there's some fundamental misunderstandings as to the seriousness of the charge. . . . I've read the December 16 [2009] report from the three health care providers who conducted the competency examination, and, in light of that finding, the gentleman was found competent. I have not heard any new, substantial evidence. In fact, I haven't heard any evidence that would give rise to a concern that their findings are no longer accurate. So, at this point, I will deny the request.'

"After the court denied the motion, defense counsel asked if the defendant could address the court. The court responded by saying that the defendant could bring anything to the court's attention through his counsel. Defense counsel followed up by stating: 'It's a request that's based on following up, based on what Your Honor said, and the request is that he be able to express that to you himself, not from counsel.' When the court questioned what defense counsel meant by that statement, defense counsel noted that the court had made a determination on the competency issue and that the defendant 'believes that there's other bases for that and wishes to convey that to the court himself.' The court responded by stating that anything the defendant wanted to apprise the court of must be done through his counsel. Defense counsel did not address the issue of competency again.

"The defendant was tried and found guilty of first degree burglary and first degree kidnapping. The court sentenced him to ten years imprisonment, with seven years of special parole." (Footnotes omitted.) Id., 403–408. The defendant then appealed to the Appellate Court from the trial court's judgment of conviction, claiming, inter alia, that the trial court erred in denying the defendant's request that he be subjected to a second competency examination.[2] Id., 402–403. The Appellate Court agreed with the defendant, concluding that the trial court had violated the defendant's right to due process by failing to conduct a proper inquiry into the defendant's competency. Id., 412. As a result, the Appellate Court reversed the judgment of conviction and ordered the trial court to "conduct a hearing to determine whether a competency evaluation is needed." Id. This appeal followed.[3]

I

We first address the state's claim that the Appellate Court improperly determined that the trial court's independent inquiry into the defendant's request for a competency evaluation was inadequate because that issue had not properly been raised or briefed by either the state or the defendant before the Appellate Court. The defendant claims that the issue decided by the Appellate Court was included in his brief and, further, that the issue decided by the Appellate Court was so intertwined

with the primary issue raised by the defendant's brief that the Appellate Court should have been permitted to decide the case on either theory. We agree with the defendant.

"We have long held that, in the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide [an appeal] before it on a basis that the parties never have raised or briefed. . . . To do otherwise would deprive the parties of an opportunity to present arguments regarding those issues. . . . If the Appellate Court decides to address an issue not previously raised or briefed, it may do so only after requesting supplemental briefs from the parties or allowing argument regarding that issue." (Citation omitted; internal quotation marks omitted.) *Haynes* v. *Middletown*, 306 Conn. 471, 474, 50 A.3d 880 (2012).[4]

In the present case, the state contends that the defendant did not appeal the sufficiency of the trial court's independent inquiry into the defendant's competency, but, instead, challenged only the trial court's decision to deny the defendant's motion for a competency evaluation as described in § 54-56d (d). The defendant counters the state's claim by asserting that a discussion regarding the inadequacy of the trial court's inquiry into the defendant's competency was contained in his brief as part of the defendant's claim that the competency evaluation should have been ordered. The defendant also suggests that the two issues—the inadequacy of the trial court's inquiry into the defendant's competence to stand trial and the failure of the trial court to order a competency hearing—are so intertwined that the Appellate Court should be permitted to decide the case on either theory. We agree with the defendant.

To properly resolve this issue, we find it necessary to briefly describe the process through which a defendant's competency to stand trial is investigated whenever the circumstances of a case call such competency into doubt. The United States Supreme Court has established that the due process clause of the fourteenth amendment to the United States constitution "prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina* v. *California*, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Similarly, due process demands that, once a defendant's competence to stand trial has been sufficiently called into question, the trial court must order an "adequate hearing on his competence to stand trial . . . ." *Pate* v. *Robinson*, 383 U.S. 375, 386, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). It is constitutionally permissible for the burden to be placed on the defendant to prove, by a preponderance of the evidence, that he is incompetent and, as a result, it is not unconstitutional to begin with the presumption that a given defendant is competent to stand trial. See *Medina* v. *California*, supra, 446–53.

In determining whether a defendant's competence has been sufficiently called into doubt so as to necessitate a hearing on the matter, the United States Supreme Court has cautioned that there is no single approach or factor that is most important in establishing competency or lack thereof. See *Drope* v. *Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts." Id.

This constitutional background informs the manner in which § 54-56d, this state's statutory scheme for determining a defendant's competence, operates to ensure that a defendant's right to be competent while standing trial is assured. Under Connecticut law, a defendant is initially presumed to be competent and, unless the court or state initially raises the issue of competency, the defendant is assigned the burden of proving his or her lack of competence by a preponderance of the evidence. General Statutes § 54-56d (a) and (b). However, "Connecticut jealously guards this right." *State* v. *Johnson*, 253 Conn. 1, 20, 751 A.2d 298 (2001). Any party before the court—including the court itself— may raise the issue of the defendant's competency at any time during a criminal proceeding by requesting that the court order a competency examination. General Statutes § 54-56d (c). If the court determines that a party's request for the defendant to undergo a competency examination is "justified," and so long as the court concludes that there is probable cause to believe that the defendant committed the crime of which he or she has been accused, the court must order a competency examination of the defendant. General Statutes § 54-56d (d).

This examination is not a court hearing, but instead is performed by one or more specialists such as a medical physician who specializes in psychiatry, a clinical psychologist, a clinical social worker, or a psychiatric nurse specialist. General Statutes § 54-56d (d). Those specialists who are appointed to conduct the defendant's examination are then required to submit a written report to the court which is to include a recommendation as to: (1) the defendant's competency, or lack thereof; and (2) if applicable depending on the circumstances of the case, whether the examiners believe that

the defendant would be a suitable candidate for civil commitment. General Statutes § 54-56d (d). Following the competency examination, and within ten days of the filing of the written report by the examiners, the trial court must hold a competency hearing. General Statutes § 54-56d (e). At this hearing, any evidence regarding the defendant's competency, including the written report filed by the examiners, may be submitted by either the defendant or the state.[5] General Statutes § 54-56d (e). This competency hearing may be waived by the defense, but only if, in the submitted written report, the examiners unequivocally conclude that the defendant is competent. General Statutes § 54-56d (e).

Thus, the procedures used to determine a defendant's competency, once a court determines that a request for a competency examination is "justified" are clearly set out by statute. Less well defined is the process through which a court determines that such a request is, in fact, "justified." This aspect of the process has largely been left to the courts. Section 54-56d "provides that a defendant shall not be tried, convicted or sentenced while incompetent and permits a competency hearing to be held whenever it appears that the defendant is unable to understand the proceedings against him or to assist in his own defense. As a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . . The trial court should carefully weigh the need for a hearing in each case, but this is not to say that it should be available on demand. The decision to grant a hearing requires the exercise of sound judicial discretion. . . . [P]risoners are not entitled and need not be permitted to make bald charges of mental incompetency to stand trial for the purpose simply of obtaining an excursion from the penitentiary. . . . A balance must be struck between the practical and the theoretical, and this can best be done by the [trial court]." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Lloyd*, 199 Conn. 359, 364–66, 507 A.2d 992 (1986).

The Appellate Court's analysis reveals that it found that the trial court's decision to refuse to order a competency examination following the initial inquiry conducted into the defense counsel's allegations regarding his concerns over the defendant's competency was an abuse of discretion. See *State* v. *Dort*, supra, 138 Conn. App. 411–12. Specifically, the Appellate Court determined that the "assertions [made by defense counsel],

paired with the statement that there may have been relevant confidential communications at issue, were sufficient to constitute specific factual allegations that, if taken as true, would constitute substantial evidence of mental impairment. The [trial] court therefore was required to conduct an 'independent inquiry,' namely, a hearing before the court, to determine whether a competency evaluation was justified." Id., 411. The Appellate Court then went on to conclude that "in denying counsel's request for a competency examination, the [trial] court did not make any reference to the defendant's behavior or any relevant communications with the defendant. It denied the motion without further comment. The [trial] court also refused the defendant the opportunity to address the [trial] court on this issue, which would have given the court an opportunity to make these key observations. We conclude that, based on the specific facts of this case, it was an abuse of discretion to disregard defense counsel's assertions without further inquiry into the defendant's competence. . . . Because the court failed to conduct an appropriate inquiry into the defendant's competence, the court violated the defendant's due process rights." Id., 412.

The analysis of the Appellate Court was entirely proper based on the claims of the parties before it. For example, in his brief before the Appellate Court, the defendant asserted that defense counsel's representations about the defendant's behavior qualified as specific factual allegations that, if true, would have constituted substantial evidence of lack of competency. Similarly, the defendant claimed that the trial court's failure to order a competency hearing based on the factual allegations before it amounted to an abuse of discretion. Along the same lines, the state, in its brief to the Appellate Court, claimed that the trial court's denial of the defendant's request for a competency examination was a proper exercise of that court's discretion. Indeed, much of the briefs of both parties submitted to the Appellate Court focused on whether the allegations made by the defendant before the trial court constituted a sufficient basis from which the court could conclude that " 'substantial evidence' " of the defendant's mental impairment existed. The Appellate Court specifically concluded that defense counsel's assertions, "paired with the statement that there may have been relevant confidential communications at issue, were sufficient to constitute specific factual allegations that, if taken as true, would constitute substantial evidence of mental impairment." *State* v. *Dort*, supra, 138 Conn. App. 411.

The state compares the situation in the present case to that in *Haynes* v. *Middletown*, supra, 306 Conn. 471. In *Haynes*, this court reversed the judgment of the Appellate Court because it concluded that the Appellate Court had improperly decided the case on an alternative

basis that had not been raised by the parties. Id., 474–75. Primarily, this court concluded that the parties lacked both adequate notice and a sufficient opportunity to address the issue that the Appellate Court ultimately addressed. Id. In that case, the plaintiffs in a civil action against the defendant municipality had appealed the judgment of the trial court setting aside a jury verdict in their favor because it concluded that the defendant was entitled to governmental immunity. Id., 472–73. The plaintiffs appealed, claiming that "(1) the defendant waived that defense by failing to request a jury charge on municipal immunity and (2) there was sufficient evidence of imminent harm for the plaintiffs' claim to fall within the identifiable person, imminent harm exception to the immunity generally afforded municipalities for the negligent performance of discretionary acts." *Haynes* v. *Middletown*, 122 Conn. App. 72, 73, 997 A.2d 636 (2010). The Appellate Court ultimately affirmed the judgment of the trial court on a third ground, concluding that "the plaintiffs never made the applicability of the identifiable victim, imminent harm exception to discretionary act immunity a legal issue in the case because they failed to plead it in their complaint or in their reply to the defendant's special defense of governmental immunity." Id., 82. This court reversed, noting that this alternative basis had not been briefed by either party prior to oral argument, and that this claim was first raised, "tangentially," by the defendant during oral argument. *Haynes* v. *Middletown*, supra, 306 Conn. 474–75. This court observed that "[t]wo judges on the panel discussed this issue with the defendant. The plaintiffs had reserved three minutes for rebuttal. During these three minutes, the plaintiffs addressed two issues raised during the defendant's argument, but they did not refer to the defendant's claim that they had failed to plead the identifiable victim, imminent harm exception to discretionary act immunity. Nor did the plaintiffs request the opportunity during or after argument to file a supplemental brief." Id. 474. On review of the record presented in *Haynes*, this court concluded that the basis on which the Appellate Court decided the case had been inadequately briefed, thereby depriving the plaintiffs of notice and an opportunity to be heard. Id.

Unlike the situation in *Haynes*, as we described earlier, the analysis of the Appellate Court in the present case essentially dealt with the issue briefed by the parties. The defendant in this case challenged the appropriateness of the trial court's decision to deny his request for a competency exam, and the state made its arguments on the same topic. The Appellate Court addressed this specific issue throughout the oral argument with both parties, and in its opinion. Whether it correctly decided the issue is another matter, the merits of which we examine in part II of this opinion. We disagree, therefore, with the state's claim that it had

inadequate notice or an insufficient opportunity to be heard on the issue on which the Appellate Court decided the present case.

## II

We now turn to the second issue, namely, whether the Appellate Court properly determined that the trial court had inadequately inquired into the defendant's request for a competency evaluation. Viewed in combination, the ultimate conclusion of the Appellate Court and this certified question suggest that there is some confusion in this area of the law. In our view, we must, therefore, rephrase the second certified question. See, e.g., *State* v. *Ouellette*, 295 Conn. 173, 184, 989 A.2d 1048 (2010) (courts must, when necessary, "reformulate the certified question to conform to the issue actually presented to and decided in the appeal to the Appellate Court"). In our view, the question properly before us is as follows: "Whether the Appellate Court properly concluded that the trial court had abused its discretion in finding that the allegations made by the defendant in support of his motion for a competency evaluation, when presumed to be true, did not constitute substantial evidence of mental impairment?"

In the present case, the state claims that the assertions made by defense counsel regarding the defendant's mental well-being and behavior did not constitute specific factual allegations, but instead were legal conclusions of the sort that this court has historically found to be an insufficient basis from which to order a competency hearing. The state further contends that, even if the representations made by defense counsel were sufficient to raise a reasonable doubt as to the defendant's competency, the trial court adequately performed that inquiry. In response, the defendant claims that the trial court's inquiry into the situation following defense counsel's factual allegations was inadequate because the trial court failed to canvass the defendant personally, nor did it make a record of its own observations regarding the defendant's in-court behavior and his ability to comprehend the charges against him and assist in his own defense. We agree with the defendant.

" 'The standard we use to determine whether a defendant is competent under state law to stand trial is that set forth in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) . . . .' " *State* v. *George B.*, 258 Conn. 779, 785, 785 A.2d 573 (2001). *Dusky* provides that the test used to determine whether a defendant is competent to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (Internal quotation marks omitted.) *Dusky* v. *United States*, supra, 402. " 'The *Dusky* standard has been codified at . . . § 54-56d (a), which provides that [a] defen-

dant shall not be tried, convicted or sentenced while he is not competent. For the purposes of this section, a defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.' . . . *State* v. *Wolff*, [237 Conn. 633, 663, 678 A.2d 1369 (1996)].

"In addition, '[t]he rule of [*Pate* v. *Robinson*, supra, 383 U.S. 386] imposes a constitutional obligation, under the due process clause, to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . When a *Pate* inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant but must hold an evidentiary hearing into the defendant's competence.' . . . *State* v. *Wolff*, supra, 237 Conn. 663–64. 'Competence to stand trial is a legal question, which must ultimately be determined by the trial court.' *State* v. *DeAngelis*, 200 Conn. 224, 229, 511 A.2d 310 (1986)." *State* v. *George B.*, supra, 258 Conn. 785–86.

As we have explained previously in this opinion, "§ 54-56d provides that a defendant shall not be tried, convicted or sentenced while incompetent and permits a competency hearing to be held whenever it appears that the defendant is unable to understand the proceedings against him or to assist in his own defense. As a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . . The trial court should carefully weigh the need for a hearing in each case, but this is not to say that it should be available on demand. The decision to grant a hearing requires the exercise of sound judicial discretion. . . . [P]risoners are not entitled and need not be permitted to make bald charges of mental incompetency to stand trial for the purpose simply of obtaining an excursion from the penitentiary. . . . A balance must be struck between the practical and the theoretical, and this can best be done by the [trial court]." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Lloyd*, supra, 199 Conn. 364–66.

"[T]he opinion of the defendant's counsel [as to his or her client's competency] 'is unquestionably a factor which should be considered' " when a trial court is attempting to discern whether a request for a competency examination has merit. *State* v. *DesLaurier*, 230

Conn. 572, 588, 646 A.2d 108 (1994), quoting *Drope* v. *Missouri*, supra, 420 U.S. 177–78 n.13. The weight to be assigned to the defense counsel's opinion must be assessed on a sliding scale; in any given case it will be largely dependent on whether the attorney's opinion is based on specific facts related to the defendant's then current competency or lack thereof. Compare *State* v. *DesLaurier*, supra, 588 (noting that "[t]he trial court reasonably could have afforded little weight to the assertion of the defendant's counsel about the defendant's 'irrational behavior' during a private conversation because his bare opinion, without any further detail about the date, duration, frequency or actual behavior involved in the conduct, presented only a legal conclusion about the defendant's competency to stand trial and failed to assert facts from which the trial court could make its own legal determination concerning the defendant's competency"), with id., 589 (suggesting that defense counsel's opinion would have carried greater weight had defendant made "specific factual allegations about how any earlier impairment 'may have affected his competence *that day*' " [emphasis in original]); see also id., 588–89 (comparing *United States* v. *Goines*, 988 F.2d 750, 782 [7th Cir.], cert. denied, 510 U.S. 887, 114 S. Ct. 241, 126 L. Ed. 2d 195 [1993], in which court found no abuse of discretion to deny competency hearing where trial court "personally observed defendant to be lucid and defense counsel failed to support allegations about defendant's competency with sufficient facts" with *United States* v. *Nichols*, 661 F. Supp. 507, 513 [W.D. Mich. 1987)], in which trial court granted competency hearing "based on defense counsel's 'four-page, detailed affidavit' ").

We have, however, also previously observed that a trial court is frequently "in the best position to assess whether [a] defendant [is behaving] rationally at [the time of the request]." *State* v. *DesLaurier*, supra, 230 Conn. 590. For this reason, we have acknowledged that a trial court "is entitled to rely on its own observations of the defendant's responses during . . . canvassing, in light of his [or her] demeanor, tone, attitude and other expressive characteristics" when evaluating a motion for a competency examination. Id.

In the present case, defense counsel provided multiple, specific representations to the court regarding the defendant's conduct that led counsel to believe that further inquiry into the defendant's competency was required.[6] For example, defense counsel stated that "in the period of one day, since yesterday, I've been asked questions and I've observed a behavior that leads me to believe that [the defendant] will continue to have difficulty and an inability to effectively communicate with counsel in such a way that it will hinder my ability to defend him, especially with regard to his understanding of the case and the facts and conditions that existed at the time that [the defendant] feels are relevant to his

defense." When pressed for further clarification by the trial judge, counsel expanded on his earlier statement: "I can represent as an officer of the court, there's a clear distinction between [a tactical disagreement between a client and counsel] and what's going on here. There's a fundamental misunderstanding regarding what can be put forward as a defense in this case. There's a fundamental misunderstanding of the seriousness of the charges in light of the defense. It's not only a disagreement, it's a situation where, without disclosing private communications between attorney-client, I am led to believe . . . that attempting to extrapolate the relevant information from [the defendant] in order for me to go forward with his defense is virtually impossible."

The trial court observed that defense counsel had had many opportunities to meet with the defendant, and questioned as to why counsel chose to raise this issue now. Counsel replied: "[I]n the last day [the defendant] has said things and not been able to field information . . . that I think is necessary to his proper understanding and his ability to further instruct me. He's indicated to me that there are things that he has withheld because he was waiting for trial—I don't know what that means, of course, Judge. But the point is, I don't know that he is stable enough or he understands enough about the seriousness of these charges for me to move forward and have him assist me in his own defense. . . . I understand the nature of this case, I understand the charges, I understand they have been changed today. . . . I've advised [the defendant] about the elements of these charges and the charges that he faced last month or at the beginning of the trial . . . . And there's been things he's seized upon, including the fact that there's . . . an alleged gun. And he's been informed that that's not whether the gun is operable or whether it's a rubber gun or it's made of wood— that does not constitute a defense. I cannot for the life of me extrapolate much more in the way of facts from him at this juncture. I don't know whether it's because he's seizing up today or what . . . but I need the information that he's talking about because the charges have just changed and now that's not an issue. And maybe that's what's causing the problem."

In response, the trial court solicited the opinion of the state, which suggested that the motion was a delaying tactic by defense counsel. The trial court determined that it had not heard "substantial evidence" that would give rise to a "concern on the part of the [trial] court that the defendant [was] not competent . . . to proceed with trial," noting that it had "read the [approximately seven month old] report from the three health care providers who conducted the competency examination, and, [that] in light of that finding, the [defendant] was found competent." The trial court continued: "I have not heard any new, substantial evidence. In fact,

I haven't heard any evidence that would give rise to a concern that their findings are no longer accurate." The trial court thus denied the defendant's motion. Defense counsel then represented to the trial court that the defendant wished to "express something to the [trial court] at this point." The trial court declined to listen to the defendant, explaining that "I usually don't solicit or accept expressions. If there's some relevant issue [defense counsel may] bring it to the [trial court's] attention . . . ." Defense counsel explained that the defendant's request was "based on what Your Honor said, and the request is that he be able to express that to you himself, not from counsel."

The trial court stated that if counsel wished to bring anything further to its attention, it would listen. Defense counsel then stated that "[m]y client wishes to express concern. He does not understand how a judge can force us to go to trial in one day. He's been informed of the speedy trial issue . . . but his concern is that yesterday the reason why he objected to the time frame was because there was no certitude to the date in September and he believes that that lack of certitude runs contrary to our agreement. And that he does have concern that a judge is able to do that, just to give him any date. Because he's sitting in jail and the purpose of the speedy trial motion is to have some certitude and a date in September which may or may not happen to him gave him great concern because he's sitting in jail." The trial court thanked the attorney for bringing the issue to its attention, and asked if there were any other issues to be addressed before beginning jury selection. Defense counsel stated, "Judge, [the defendant] wishes me to tell you that he's not ready for any of this stuff." The trial court then proceeded with other housekeeping matters without ever directly canvassing the defendant regarding his competency.

It is important to understand the context in which the defense counsel made these statements. In an earlier information, the defendant in this case had been charged with, inter alia, burglary in the first degree in violation of § 53a-101 (a) (1),[7] which requires as an essential element of the offense the defendant to be in possession of a dangerous weapon or deadly instrument, and kidnapping in the first degree with a firearm in violation of General Statutes (Supp. 2014) § 53a-92a (a),[8] which requires the defendant to display or represent that he "possesses a pistol . . . or other firearm." The state then amended the information, charging the defendant instead with the crimes of burglary in the first degree in violation of § 53a-101 (a) (2),[9] strangulation in the second degree in violation of § 53a-64bb (a)[10] and kidnapping in the first degree in violation of § 53a-92 (a) (2) (C).[11] None of these amended charges require the use, or represented use, of a firearm, deadly weapon, or dangerous instrument. See General Statutes §§ 53a-101 (a) (2), 53a-92 (a) (2) (C) and 53a-64bb (a). Defense

counsel quite clearly indicated that the defendant was focused entirely on whether he had allegedly used a gun in committing the acts of which he was accused— a fact that was no longer relevant to his defense, given the amended charges against him.[12] Thus, as a result, the representations made by defense counsel indicated that, as a result of new events—namely, the amendment of the information—the defendant was unable to assist in his own defense because he was unable to supply defense counsel with any relevant information to combat those charges. Viewed in this context, defense counsel's representations were quite factually specific and, if true, suggested both a lack of ability of the defendant to communicate rationally with counsel, and a lack of comprehension by the defendant of the charges that he currently faced.

The statements made by defense counsel in support of the defendant's motion for a competency hearing represent the sort of specific, fact laden allegations that, if true, would constitute substantial evidence of mental impairment on the part of the defendant. In the present case, the trial court rejected these statements, finding them insufficient in light of a seven month old competency report. We conclude that this represented an abuse of the trial court's discretion.

The state contends that the allegations made by defense counsel in this case amounted only to "legal conclusions" of the sort that we have previously found insufficient to qualify as "substantial evidence" of mental impairment. The state compares the allegations by defense counsel in this case to those by the defendant in *State* v. *Ross*, 269 Conn. 213, 268–74, 849 A.2d 648 (2004), and *State* v. *Lloyd*, supra, 199 Conn. 364. We disagree. In *Ross* and *Lloyd*, defense counsel made very generic, conclusory statements to the court. See, e.g., *State* v. *Ross*, supra, 268 ("[d]efense counsel indicated that the defendant was suffering from severe depression and made repeated representations to the effect that he was 'unable to rationally have discussion with regard to choices in his case at this time' "); *State* v. *Lloyd*, supra, 364 ("[D]efense counsel argued to the court that the defendant appeared to be confused and not to 'understand everything that's going on.' Other than this assertion, there were no specific allegations concerning his competence to be sentenced."). In the present case, defense counsel was as specific as possible while still preserving the confidentiality of the communications between himself and the defendant. Defense counsel provided examples of the trouble that he perceived that the defendant was experiencing, offered a theory as to what had caused this sudden lack of competence, and explained in detail why the defendant's conduct was preventing counsel from assisting in his client's defense. It would not be reasonable to expect defense counsel's allegations in this regard to be more precise.

In *Lloyd*, for instance, we noted that defense counsel argued to the court that "the defendant appeared to be confused and not to understand everything that's going on." (Internal quotation marks omitted.) *State* v. *Lloyd*, supra, 199 Conn. 364. We then observed that "[o]ther than this assertion, there were no specific allegations concerning his competence to be sentenced. The court could have assumed that the defendant's current mental state was the product of drug abuse, but that was never averred." Id. We then stated that: "we conclude that the defendant failed to make specific factual allegations sufficient to raise a reasonable doubt as to his competence and that the trial court did not err in imposing sentence. The defendant did not specify the grounds of his claimed incompetency and left it to the trial court to surmise why he was mentally impaired." Id., 366. Likewise, in *State* v. *Ross*, supra, 269 Conn. 266–74, shortly after the defendant's suicide attempt the defendant requested that a trial court order a competency examination. "At the hearing, defense counsel indicated that the defendant was limiting his claim that he was incompetent to the second prong of § 54-56d, i.e., that he was unable to assist in his own defense. Defense counsel indicated that the defendant was suffering from severe depression and made repeated representations to the effect that he was 'unable to rationally have discussion with regard to choices in his case at this time.' . . . The trial court canvassed the defendant on his understanding of the nature of the proceedings." Id., 267–68. Thereafter, the court made several specific factual findings that indicated that the defendant was able to assist in his own defense. See id., 269 (finding that defendant "did not suffer from any known or apparent illness or defect that would impair his ability to assist his counsel" was "intelligent and articulate" and "fully comprehended the status of his case").

"On the basis of these findings, the court determined that the evidence did not establish that the defendant was unable to assist counsel and that any doubt on that matter was based not on the defendant's *inability* to assist counsel, but 'upon a difference of opinion [between the defendant] and his counsel concerning the manner in which the case in mitigation [was] to be presented, if presented at all.' Accordingly, the trial court denied the defendant's motion for a competency examination. Over the course of the ensuing penalty phase proceeding, the trial court noted periodically on the record that the defendant was interacting appropriately with his counsel." (Emphasis in original; footnote omitted.) Id., 269–70. We then stated that "[w]e conclude that the trial court reasonably could have determined, on the basis of its canvass of the defendant at the . . . hearing, and the lack of any testimony, exhibits or medical reports to support the defendant's claim of incompetence, that there was no reasonable doubt that the defendant not only understood the nature of the

proceedings but also was able to communicate with and assist his counsel. As the trial court noted, the facts adduced at the hearing supported, at most, an inference that the defendant was reluctant to assist counsel, not that he was *unable* to do so." (Emphasis in original.) Id., 273.

*Ross* is easily distinguished from the present case because it involved specific findings made by the trial court as the result of a canvass. See Id., 269. We placed great weight on the findings made by the court. Id., 273. In the present case, there was no canvass and, therefore, no findings made by the trial court. Instead, the court relied upon a seven month old competency exam.

In *Lloyd* we noted that "[i]n support of his motion to withdraw [his plea of guilty], the defendant averred that on the day of the plea he was under the influence of drugs and did not understand the questions that were asked or the meaning of his plea. The defendant did not state when the drugs had been consumed, how much he had taken, or even what type of narcotic he had used." *State* v. *Lloyd*, supra, 199 Conn. 361. We also observed that "[t]he trial court after conducting an extensive canvass, accepted his plea." Id., 360. We further observed that "[f]or the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allegations furnish a basis for withdrawal of the plea . . . and are not conclusively refuted by the record of the plea proceedings, and other information contained in the court file, then an evidentiary hearing is required." (Internal quotation marks omitted.) Id., 363.

In our conclusion on this issue, we specifically noted that "[a]fter carefully reviewing the record of the plea canvass and the proceedings on the motion to withdraw, we conclude that the defendant failed to establish the need for a hearing to determine his competence . . . and that the trial court therefore properly denied the motion without first ordering a hearing. . . . Moreover, the defendant during the plea proceedings specifically told the court that he was not then under the influence of any drugs or medication. *This alone would tend to refute the defendant's allegations made in his motion to withdraw.*" (Citations omitted; emphasis added.) Id., 363–64.

Thus, we conclude that *Lloyd* is also distinguishable on the basis of two factors. First, the allegations in the present case are far more specific than *Lloyd*. Second, *Lloyd* involved a plea canvass wherein the defendant specifically refuted the basis for his motion to withdraw. In both *Lloyd* and *Ross* we emphasized the presence of a form of canvass of the defendant by the trial court. A canvass of any kind is absent in the present case. Therefore, the state's reliance upon both *Lloyd* and *Ross* is misplaced.

The state also contends that trial court was permitted to disregard the allegations of defense counsel in favor of the trial court's own personal observations of the defendant, suggesting that "[b]y requiring the defendant to funnel [issues pertaining to the defendant's competency] through counsel, the court essentially canvassed the defendant through his attorney." Although we agree with the state that a trial court need not automatically defer to the opinion of defense counsel on the matter of the defendant's competence when the trial court sees evidence contradicting those representations before his or her own eyes; see, e.g., *State* v. *DesLaurier*, supra, 230 Conn. 589–90; we disagree that the defendant was canvassed here, and we note that the trial court did not deny the defendant's motion on the basis of its own in-court observations regarding the defendant's behavior.

To begin, we disagree that a defendant whose competence has been challenged may be personally canvassed through the questioning of his or her attorney. The *Dusky* standard of competence requires that a defendant possess, at a minimum, "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . ." *Dusky* v. *United States*, supra, 362 U.S. 402. If a defendant is unable to rationally consult with his or her attorney, it would be impossible, logically, for counsel to speak on his or her behalf. Furthermore, although the trial court might well have been able to determine that the defendant was indeed competent to stand trial by canvassing the defendant personally, it did not do so in this case, nor did it justify its denial of the defendant's motion on that ground. Instead, the trial court relied on an old competency report, despite counsel's representations that this issue had newly surfaced. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." (Internal quotation marks omitted.) *State* v. *Johnson*, supra, 253 Conn. 21. On the basis of the specific facts of the present case, we conclude that it was an abuse of the trial court's discretion not to order a competency hearing.

### III

We now turn to the final issue, namely, whether the Appellate Court improperly concluded that the appropriate remedy in the present case was to reverse the defendant's conviction and order a new hearing to determine whether a competency evaluation is presently required for the defendant. The state contends that the appropriate remedy in this case would be only to order a new hearing to determine if a second competency examination is required of the defendant, but that it is not appropriate to vacate the defendant's conviction. The state also notes that the defendant has not requested a new competency evaluation following his

conviction. In response, the defendant contends that the remedy ordered by the Appellate Court is in line with United States Supreme Court precedent. We agree with the defendant.

In resolving a similar issue in *Drope*, the United States Supreme Court observed as follows: "The question remains whether [the] petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether [the] petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances, see [*Pate* v. *Robinson*, supra, 383 U.S. 386–387, and *Dusky* v. *United States*, supra, 362 U.S. 403], we cannot conclude that such a procedure would be adequate here. Cf. *Conner* v. *Wingo*, [429 F.2d 630, 639–40 (6th Cir. 1970)]. The [s]tate is free to retry the petitioner, assuming, of course, that at the time of such trial he is competent to be tried." *Drope* v. *Missouri*, supra, 420 U.S. 183.

We agree with the sentiment expressed by the United States Supreme Court in *Drope*. It is no longer possible for us to determine whether the defendant was competent—and therefore able to rationally communicate with and assist counsel in his defense—during the trial that led to his conviction. As a result, we cannot say that his due process rights would be adequately protected merely by ordering a new hearing to determine his competency. We therefore affirm the judgment of the Appellate Court reversing the judgment of conviction and directing the trial court to conduct a hearing to determine whether a competency evaluation is needed.

The judgment of the Appellate Court is affirmed, and the case is remanded to that court with direction to remand the case to the trial court for further proceedings in accordance with this court's opinion.

In this opinion ROGERS, C. J., and PALMER and ZARELLA, Js., concurred.

[1] General Statutes § 54-56d provides in relevant part: "(a) A defendant shall not be tried, convicted or sentenced while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense.

"(b) A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry.

"(c) If, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency.

"(d) If the court finds that the request for an examination is justified and that, in accordance with procedures established by the judges of the Superior Court, there is probable cause to believe that the defendant has committed the crime for which the defendant is charged, the court shall order an examination of the defendant as to his or her competency. The court may (1) appoint one or more physicians specializing in psychiatry to examine

the defendant, or (2) order the Commissioner of Mental Health and Addiction Services to conduct the examination either (A) by a clinical team consisting of a physician specializing in psychiatry, a clinical psychologist and one of the following: A clinical social worker licensed pursuant to chapter 383b or a psychiatric nurse clinical specialist holding a master's degree in nursing, or (B) by one or more physicians specializing in psychiatry, except that no employee of the Department of Mental Health and Addiction Services who has served as a member of a clinical team in the course of such employment for at least five years prior to October 1, 1995, shall be precluded from being appointed as a member of a clinical team. If the Commissioner of Mental Health and Addiction Services is ordered to conduct the examination, the commissioner shall select the members of the clinical team or the physician or physicians. When performing an examination under this section, the examiners shall have access to information on treatment dates and locations in the defendant's treatment history contained in the Department of Mental Health and Addiction Services' database of treatment episodes for the purpose of requesting a release of treatment information from the defendant. If the examiners determine that the defendant is not competent, the examiners shall then determine whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section. If the examiners determine that there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section, the examiners shall then determine whether the defendant appears to be eligible for civil commitment, with monitoring by the Court Support Services Division, pursuant to subdivision (2) of subsection (h) of this section. If the examiners determine that there is not a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order under this section, the examiners shall then determine whether the defendant appears to be eligible for civil commitment to a hospital for psychiatric disabilities pursuant to subsection (m) of this section and make a recommendation to the court regarding the appropriateness of such civil commitment. The court may authorize a physician specializing in psychiatry, a clinical psychologist, a clinical social worker licensed pursuant to chapter 383b or a psychiatric nurse clinical specialist holding a master's degree in nursing selected by the defendant to observe the examination. Counsel for the defendant may observe the examination. The examination shall be completed within fifteen business days from the date it was ordered and the examiners shall prepare and sign, without notarization, a written report and file such report with the court within twenty-one business days of the date of the order. On receipt of the written report, the clerk of the court shall cause copies to be delivered immediately to the state's attorney and to counsel for the defendant.

"(e) The court shall hold a hearing as to the competency of the defendant not later than ten days after the court receives the written report. Any evidence regarding the defendant's competency, including the written report, may be introduced at the hearing by either the defendant or the state, except that no treatment information contained in the Department of Mental Health and Addiction Services' database of treatment episodes may be included in the written report or introduced at the hearing unless the defendant released the treatment information pursuant to subsection (d) of this section. If the written report is introduced, at least one of the examiners shall be present to testify as to the determinations in the report, unless the examiner's presence is waived by the defendant and the state. Any member of the clinical team shall be considered competent to testify as to the team's determinations. A defendant and the defendant's counsel may waive the court hearing only if the examiners, in the written report, determine without qualification that the defendant is competent. Nothing in this subsection shall limit any other release or use of information from said database permitted by law. . . ."

Although § 54-56d (a) has been the subject of several recent amendments by the legislature; see, e.g., Public Acts 2009, No. 09-79, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The defendant also challenged the trial court's refusal to permit the defendant to withdraw his motion for a speedy trial. See *State* v. *Dort*, supra, 138 Conn. App. 403 n.1. The Appellate Court did not reach this claim, and it is not relevant to the issue presently before this court.

[3] We granted the state's petition for certification limited to three questions:

(1) "Did the Appellate Court properly determine that the trial court's independent inquiry into the defendant's request for a competency evaluation was inadequate, when that issue had not been raised or briefed by the parties?"; (2) "If so, did the Appellate Court properly determine that the trial court had inadequately inquired into the defendant's request for a competency evaluation?"; and (3) "Assuming the first two questions are answered in the affirmative, did the Appellate Court properly reverse the defendant's conviction and order a hearing to determine whether a competency evaluation is required?" State v. Dort, 307 Conn. 931, 55 A.3d 769 (2012).

[4] We requested that the parties provide supplemental briefing prior to oral argument to determine what impact, if any, this court's recent decision in *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162–63, 84 A.3d 840 (2014), had on the resolution of this certified question. After hearing from the parties, we conclude that, upon further reflection, the Appellate Court did not reach out and decide an issue that had been inadequately briefed. Therefore, we conclude that *Blumberg Associates Worldwide, Inc.* does not control the present case.

[5] The only restriction on the information to be presented to the court by either party is that "no treatment information contained in the Department of Mental Health and Addiction Services' database of treatment episodes may be included in the written report or introduced at the hearing unless the defendant released the treatment information . . . ." General Statutes § 54-56d (e).

[6] We note that the state contends that it could have potentially provided the court with factual representations with even greater specificity because it claims that such allegations, even if they contained or were based on confidential communications between defense counsel and his client, would not have been subject to the attorney-client privilege. Because we conclude that defense counsel's representations actually made to the court were sufficient, if true, to qualify as substantial evidence of the defendant's mental impairment, we need not decide this issue.

[7] General Statutes § 53a-101 provides in relevant part: "(a) A person is guilty of burglary in the first degree when (1) such person enters or remains unlawfully in a building with intent to commit a crime therein and is armed with explosives or a deadly weapon or dangerous instrument . . . ."

[8] General Statutes (Supp. 2014) § 53a-92a provides in relevant part: "(a) A person is guilty of kidnapping in the first degree with a firearm when such person commits kidnapping in the first degree as provided in section 53a-92, and in the commission of said crime such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. . . ."

We note that § 53a-92a was amended by No. 13-28, § 2, of the 2013 Public Acts, which made technical changes to the statute that are not relevant to this appeal. In the interest of simplicity, we refer to the 2014 supplement of the statute.

[9] General Statutes § 53a-101 provides in relevant part: "(a) A person is guilty of burglary in the first degree when . . . (2) such person enters or remains unlawfully in a building with intent to commit a crime therein and, in the course of committing the offense, intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone . . . ."

[10] General Statutes § 53a-64bb (a) provides: "A person is guilty of strangulation in the second degree when such person restrains another person by the neck or throat with the intent to impede the ability of such other person to breathe or restrict blood circulation of such other person and such person impedes the ability of such other person to breathe or restricts blood circulation of such other person."

[11] General Statutes § 53a-92 provides in relevant part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (C) terrorize him or a third person . . . ."

[12] We note that the state contends that "[t]he fact that the state's final substitute information did not include crimes involving operable firearms, deadly weapons, or dangerous instruments does not alter the analysis . . . ." We do not agree. The essential elements of the substitute charges did not require the state to prove either that the defendant (1) had been in possession of a deadly weapon or dangerous instrument, or (2) represented by words or actions that he was in possession of a firearm. See footnotes 9, 10 and 11 of this opinion. Thus, the existence, or lack thereof, of a dangerous instrument, deadly weapon, or firearm was irrelevant to the final

substituted charges against the defendant.