IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LUIS COELLO, | § | |
| | § | |
| | § | |
| Defendant Below, Appellant, | § | No. 50, 2024 |
| | § | |
| | § | |
| v. | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| | § | Case No. 2207007564 |
| Appellee. | § | |


Submitted:  October 23, 2024
Decided:    December 13, 2024


Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court.  **AFFIRMED**

Santino Ceccotti, Esquire, OFFICE OF THE PUBLIC DEFENDER, Wilmington, Delaware, *for Appellant*.

John Williams, Esquire, Delaware Department of Justice, Dover, Delaware.


**VALIHURA**, J.:

*INTRODUCTION*

In the early morning hours of June 22, 2022, Luis Coello called 911 following a vehicle crash. Officers arrived at the scene shortly thereafter and found Coello lying on the ground. One of the officers, Patrolman Miller, soon recognized that Coello was in pain and asked him to sit down out of medical concern. Following this, Miller asked Coello for his license as part of standard accident investigation procedure.

Apparently still in pain, Coello grimaced and began walking away. In response, Miller asked Coello to stay due to medical concern and the need to investigate the accident.

Two other officers – Braun (now Seibert, by marriage) and Strickland – soon arrived and began questioning Coello as Coello's back was to the police vehicle. Braun, who had just seen the accident scene where one person was still trapped inside a rolled-over Jeep, asked Coello where he was going. Coello gave nonresponsive answers. Coello then told the officers, "English is no good, only speak Spanish." Braun asked if Coello was the driver, Coello responded with "yes" and "yeah" answers, and the State published these statements – captured on video – to the jury. After Strickland helped Coello to sit down, Braun pointed at the Jeep and asked if Coello was driving, to which Coello appeared to nod his head affirmatively. Following the questioning, Coello was not arrested, and he freely left the scene.

Subsequent investigation showed that another individual had been killed in the crash, and Coello was indicted on charges of Vehicular Homicide in the Second Degree, Vehicular Assault in the First Degree, and Unreasonable Speed. Trial Counsel sought to suppress Coello's statements at the crash scene, arguing that Coello should have been

2

Mirandized, that his statements were involuntary, and that he ambiguously invoked his right to remain silent. The Superior Court denied the motion to suppress, and Coello was convicted of all charges.

Coello appeals, arguing that his statements should have been suppressed because officers obtained them in violation of the Fifth Amendment to the United States Constitution and Article One, Section Seven of the Delaware Constitution. In accordance with the custodial interrogation requirement that triggers *Miranda v. Arizona*[1] under the Fifth Amendment, Coello argues that he was subject to custodial interrogation at the crash scene. We find that he was not in custody for *Miranda* purposes – sometimes referred to as *Miranda* custody – and, thus, was not subject to custodial interrogation. Therefore, he was not entitled to *Miranda* warnings. Accordingly, the Superior Court did not err in denying Coello's motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Crash and On-Scene Questioning

At 4:14 a.m. on June 22, 2022, Defendant-Appellant Luis Coello called 911 requesting medical attention concerning a vehicle crash behind the Del-One Federal Credit Union located at 150 East Water Street in Dover.[2] Coello's ability to communicate was hindered by his limited English language skills and his pain from the injuries he sustained

---

[1] 384 U.S. 436 (1966).

[2] App. to Opening Br. at A12 (Motion to Suppress and Exclude).

in the crash.[3]  Nonetheless, Coello "attempted to explain to the 911 operator his back and head were broken in an accident but he could not remember what had happened."[4]  During the call, Coello can be heard yelling "I need help" to the police.[5]

Dover Patrolman Jacob Miller arrived at the crash scene and noticed Coello lying on the ground.[6]  Miller activated his body-worn camera and the emergency lights on his fully-marked Dover Police vehicle.[7]  Coello immediately told Miller "I feel pain."[8]  Miller recognized that Coello appeared to be in pain and, out of medical concern, asked Coello to take a seat.[9]  About a minute later, Miller followed standard vehicle accident procedure and asked Coello for his license.[10]

---

[3] Coello argues on appeal that he is a native Spanish speaker with highly limited English language abilities. *Id.*  The trial court did not make a finding as to the strength of Coello's English abilities, and our review of the recordings of the interaction leads us to believe that Coello had sufficient English abilities for a basic understanding of the officers' questions in this case.

[4] *Id.* at A12 (Motion to Suppress and Exclude).

[5] *Id.*

[6] *Id.* at A33–34 (Miller Test. 11:22–12:1).

[7] *Id.* at A34 (Miller Test. 12:11–14).

[8] *Id.* at A13 (Motion to Suppress and Exclude).

[9] *Id.* at A36 (Miller Test. 14:3–9).

> Q:  And I've stopped the video at about 22 seconds in.  You asked him to take a seat.  What was the reason that you asked him to take a seat?
>
> A:  If you see by the way he is standing and the crash site behind it, it seemed like he was in obvious pain.  So I was looking at it from a medical standpoint, so that way he doesn't cause any further damage to himself.

[10] *Id.* (Miller Test. 14:13–20).

> Q:  So I stopped [the video] again about one minute and eight minutes into the video.  What was the reason you asked him for your license?
>
> A:  That's standard for any time that there's a crash investigation, which obviously, he is the only person I have seen at this point and the vehicle being laid down in the

Coello turned toward the emergency lights with a grimacing face and started to walk away.[11] In response, Miller asked Coello to "stay in this area or come back here."[12] Miller asked Coello to return out of medical concern for Coello, who appeared to have suffered head and back trauma, and because Miller needed to keep Coello on scene as part of the investigation. Coello advised Miller, "[M]y pain is very strong, I need medicine" and that "[t]his [pointing to his neck] is broken."[13] Around this time, another officer, PFC Curry, can be heard asking if any of the EMTs spoke Spanish, but the inquiry for Spanish speakers proved unfruitful.[14]

A couple minutes later, two additional officers – Braun and Strickland – arrived to question Coello.[15] Patrolwoman Braun had already viewed the accident scene, where she had observed a rolled-over Jeep with one person inside receiving medical attention.[16] As Braun questioned Coello, Coello was positioned with his back to the hood of the police vehicle, Strickland to his left, and Braun in front of him.[17] Braun asked Coello where he was going, but Coello gave an answer unintelligible to the officers.[18] Braun asked again

---

ditch, I'm assuming that is his vehicle. This is why I'm asking him for his ID at this time.

[11] *Id.* at A37 (Miller Test. 15:2–6).

[12] *Id.*

[13] *Id.* at A13 (Motion to Suppress and Exclude).

[14] *Id.* at A44 (Miller Test. 22:1–11).

[15] *Id.* at A39 (Miller Test. 17:4–12).

[16] *Id.* at A48–49 (Seibert Test. 26:21–27:3).

[17] State's Exhibit 4 (Body-Worn Camera 4:20–6:02).

[18] *Id.* (Body-Worn Camera 5:40–49).

and Coello responded: "Where you're going?"[19] Coello said to the officers, "English is no good, only speak Spanish."[20] Braun then attempted to use Google Translate to communicate with Coello.[21]

With her body-worn camera on, Braun asked Coello if the Jeep was his vehicle and if he was driving. Coello responded with "yes" or "yeah" to some of Braun's inquiries, and the State published this video to the jury.[22] After Strickland helped Coello to sit down, Braun pointed to the crashed Jeep and asked Coello "your car?" and "you drive it?" to which Coello appeared to affirmatively respond by nodding his head.[23] But Coello later said "I no driving" when EMTs arrived to assess and treat him.[24]

During the questioning, Coello was never handcuffed or Mirandized. Coello walked away from the scene and was not contemporaneously arrested.

*B. The Accident Investigation*

Both Coello and another passenger, DeAndre Tolliver, indicated that there was a third individual in the vehicle. A passport for Jorge Vallardes was recovered at the scene.

---

[19] *Id.* (Body-Worn Camera 5:49–53).

[20] *Id.* (Body-Worn Camera 5:54–58).

[21] State's Exhibit 5 (Body-Worn Camera 0:00–46).

[22] *Id.* (Body-Worn Camera 2:48–51); Trial Trans. 197:9–199:4.

[23] State's Exhibit 5 (Body-Worn Camera 7:29–36).

[24] App. to Opening Br. at A13 (Motion to Suppress and Exclude); *see also* State's Exhibit 5 (Body-Worn Camera 11:02).

A little over a week later, Detective Matthews responded to a report of a body found on the east shore of the Saint Jones River.[25] This body was later identified as Jorge Vallardes.

This discovery led Matthews to obtain a warrant to search the vehicle involved in the accident. Matthews executed the warrant and located, among other items, various paperwork with Coello's and Vallardes' names on them.

On January 3, 2023, Coello was indicted on charges of Vehicular Homicide in the Second Degree, Vehicular Assault in the First Degree, and Unreasonable Speed.

### C. The Superior Court Suppression Hearing

After his indictment, Coello filed a "Motion to Suppress and Exclude" the statements he made to officers at the scene.[26] Coello asserted that the statements were the product of an "unconstitutional interrogation of [Coello] in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution [and] under Article I Sections 6 and 7 of the Delaware Constitution[.]"[27] Coello argued that:

> [o]nce Mr. Coello was approached by officers Braun and Strickland so that he was surrounded on three sides by officers with a patrol vehicle to his back, he was no longer free to leave by any reasonable person standard and therefore in custody. As Braun continued to question him, Mr. Coello was subject to custodial interrogation.[28]

---

[25] App. to Opening Br. at A15 (Motion to Suppress and Exclude); *see also* Trial Trans. 88:18–91:1.

[26] App. to Opening Br. at A12–18 (Motion to Suppress and Exclude). The Motion also sought exclusion of surveillance video from another location on unrelated grounds. That issue is not before us today.

[27] *Id.* at A12.

[28] *Id.* at A15.

Coello then argued that he "was never administered his Miranda warnings, never waived his right to remain silent and attempted to invoke by advising that he did not speak English."[29] The Motion concluded that "Mr. Coello was not advised of his right to remain silent during the custodial interrogations and the State did not clarify his ambiguous invocation, therefore his statements and all evidence stemming from them are inadmissible."[30]

After conducting a suppression hearing, which included testimony from officers Miller and Braun, the Superior Court denied Coello's motion.

*First*, the court held that Coello was not in *Miranda* custody and, therefore, Coello's *Miranda* rights were not triggered.[31] The court relied on cases including *Laury v. State*[32] for the principle that officers do not need to Mirandize suspects when police are performing initial investigatory functions at the scene of a crime.[33] The court considered the seriousness of the accident and concluded that "under the totality of the circumstances, custody status was lacking, and Miranda was therefore not triggered."[34]

*Second*, the court rejected Coello's claim that his statements were not knowing and voluntary.[35] While acknowledging the voluntariness analysis was separate from the

---

[29] *Id.*

[30] *Id.* at A17 (Motion to Suppress and Exclude).

[31] *Id.* at A85 (Trial Court Decision 63:3–12).

[32] 260 A.2d 907, 908 (Del. 1969).

[33] App. to Opening Br. at A84–85 (Trial Court Decision 62:8–63:2).

[34] *Id.* at A85 (Trial Court Decision 63:10–12).

[35] *Id.* (Trial Court Decision 63:13–18).

*Miranda* analysis and would involve a due process analysis, the court held that the language barrier issues and unresponsiveness to questions were matters to be considered by a jury when weighing the voluntariness of Coello's statements.[36] The court concluded that, "[o]n this record, even though an issue challenging voluntariness was not fairly raised, there will be no due process violation in admitting the statement and evidence based on involuntariness."[37]

*Third*, the court rejected Coello's contention that he invoked, albeit ambiguously, his right to remain silent.[38] Finally, the court noted that "the surrounding circumstances in this case may all be considered by the jury when determining the weight due his statements, if they are, in fact, offered as admissions at trial."[39] The court then denied Coello's suppression motion.

### D. Coello's Conviction

Following the denial of Coello's suppression motion, the State introduced the statements in its case-in-chief,[40] and Coello was convicted of all counts charged.[41] Coello

---

[36] *Id.* at A85–86 (Trial Court Decision 63:19–64:7).

[37] *Id.* at A87 (Trial Court Decision 65:11–14). The court observed that there was no police coercion and no "overt action designed to overbear his will." *Id.* at A87 (Trial Court Decision 65:10–11).

[38] *Id.* at A87–88 (Trial Court Decision 65:15–66:12).

[39] *Id.* at A88 (Trial Court Decision 66:10–12).

[40] Trial Trans. 184:21–23 (admission of State's Exhibit 4); Trial Trans. 197:9–11 (admission of State's Exhibit 5).

[41] Exhibit B (Sentence Order).

was sentenced on January 9, 2024 to eleven years at Level V, suspended after two years, followed by decreasing levels of probation.[42] Coello filed a timely notice of appeal.

## II. CONTENTIONS ON APPEAL

Coello argues on appeal that the trial court erred in denying his motion to suppress because he was subject to custodial interrogation and his statements were taken in violation of the Fifth Amendment as applied in *Miranda v. Arizona*.[43] The State argues that the trial court did not err because Coello was not in *Miranda* custody and, therefore, was not subject to the custodial interrogation that triggers *Miranda*.[44]

---

[42] *Id.*

[43] To the extent that Coello presents a voluntariness argument, we decline to address it because he did not properly present it on appeal. This Court has written that "[i]t is well established that to assure consideration of an issue by the court, the appellant must both raise it in [the Summary of the Argument] and pursue it in the Argument portion of the brief." *Roca v. E.I. du Pont de Nemours and Co.*, 842 A.2d 1238, 1242 (Del. 2004) (internal quotations omitted). Coello did not raise the voluntariness issue or even use the word "involuntary" in the Summary of the Argument; therefore, we decline to consider the issue. *See also* Del. Supr. Ct. R. 14(b)(vi) (requiring that "[t]he argument shall be divided under appropriate headings, and each argument shall commence on a new page.").

Coello also argues that the denial of his motion to suppress violated the Delaware Constitution and urges this court to adopt an explicit waiver requirement to waive *Miranda* rights. We decline to address whether the Delaware Constitution provides a more expansive definition of custodial interrogation because it was not properly raised on appeal. *See Thomas v. State*, 293 A.3d 139, 141 (Del. 2023) ("Summary arguments unsupported by legal argument, analysis, and authority are waived."). And even if Coello's argument for adopting the explicit waiver standard had been properly presented on appeal, we decline to decide it because our finding that Coello was not subject to custodial interrogation negates any need to consider *Miranda* waiver.

[44] The State also presented an alternative harmless error argument at oral argument but failed to include it in the Answering Brief. Because we find that Coello was not in *Miranda* custody, we need not address this harmless error argument.

*III. STANDARD OF REVIEW*

"We apply a mixed standard of review to a trial court's order denying a motion to suppress evidence after an evidentiary hearing."[45] We review the denial of a motion to suppress evidence for an abuse of discretion.[46] We review findings of fact for clear error, but we exercise *de novo* review over legal determinations.[47]

*IV. ANALYSIS*

Coello argues that "[t]he State failed to demonstrate [Coello] waived his rights, either explicitly or implicitly."[48] Because whether Coello waived his rights only becomes relevant if he was entitled to *Miranda* warnings at the scene of the accident, we begin by examining whether Coello was in *Miranda* custody.

*A. Miranda Only Applies When an Individual Is Subject to Custodial Interrogation*

We begin by recognizing that "police officers are not required to administer *Miranda* warnings to everyone whom they question."[49] This Court has noted that "[f]or *Miranda* to apply, the defendant must be: (i) in custody or in a custodial setting, and (ii) the questioning must rise to the level of an interrogation."[50] Both prongs of this inquiry

---

[45] *McDougal v. State*, 314 A.3d 1077, 1086 (Del. 2024) (citing *Garnett v. State*, 308 A.3d 625, 641 (Del. 2023)).

[46] *Juliano v. State*, 254 A.3d 369, 376 (Del. 2020).

[47] *Garnett*, 308 A.3d at 641 (citing *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008)).

[48] Opening Br. at 2.

[49] *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (holding that "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'").

[50] *Loper v. State*, 8 A.3d 1169, 1176 (Del. 2010) (citing *McAllister v. State*, 807 A.2d 1119, 1125–26 (Del. 2002)).

are essential, and this Court has noted that "[t]he *Miranda* procedural safeguards were expressly limited to interrogation in a custodial setting."[51]

The primary disagreement between the parties is whether Coello was subject to *Miranda* custody. We find this issue to be dispositive and hold that Coello was not in *Miranda* custody and, therefore, he was not subject to custodial interrogation.

### B. Case Law From This Court and the United States Supreme Court Shows That Coello Was Not Subject to Miranda Custody

"In order for a court to conclude that a suspect is in custody, it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with formal arrest' to such an extent that he would not feel free to leave."[52] "Not all restraints on freedom of movement amount to custody for purposes of *Miranda*[]"[53] and a court must "instead ask[] the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*."[54] A review of case law from this Court and the United States Supreme Court leads us to conclude that Coello did not objectively experience this restraint on his freedom of movement.

---

[51] *Hammond v. State*, 569 A.2d 81, 93 (Del. 1989).

[52] *Torres v. State*, 608 A.2d 731, 1992 WL 53406, at *2 (Del. Feb. 7, 1992) (TABLE) (quoting *United States v. Phillips*, 812 F.2d 1355, 1360 (11th Cir. 1987)).

[53] *Howes v. Fields*, 565 U.S. 499, 509 (2012).

[54] *Id.*

Not all police questioning requires police to give *Miranda* warnings. The United States Supreme Court has noted that "persons temporarily detained pursuant to [*Terry*] stops are not 'in custody' for the purposes of *Miranda*."[55] At the same time, an individual subject to questioning may be entitled to *Miranda* warnings when his "freedom of action is curtailed to a 'degree associated with formal arrest.'"[56] In *Berkemer*, the United States Supreme Court stated that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[57]

In *Miranda v. Arizona*, the United States Supreme Court wrote that "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding[]"[58] and that "[i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."[59] This Court has also noted that questioning as part of "the routine, initial, on-scene investigation by the police"[60] does not mean a suspect is in *Miranda* custody. In *Laury v. State*, we held that

> [i]t is unreasonable to expect the police to perform their initial investigatory function at the scene of a crime under the restrictions of the *Miranda* rules. Neither the *Miranda* case, nor its progeny, require such restriction and we decline to extend the *Miranda* rules to the routine, initial, on-scene

---

[55] *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (referring to *Terry v. Ohio*, 392 U.S. 1 (1968)).

[56] *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)).

[57] *Id.* at 428.

[58] *Miranda v. Arizona*, 384 U.S. 436, 477 (1966).

[59] *Id.* at 478.

[60] *Laury v. State*, 260 A.2d 907, 908 (Del. 1969).

investigation by the police. To do so would amount, in our opinion, to an unwarranted "constitutional straight-jacket" on law enforcement.[61]

We commented further in *Hammond v. State* "that the rules established in *Miranda* do not apply to 'the routine, initial, on-scene investigation by the police.'"[62] In *Hammond*, the defendant was the alleged driver of a vehicle that had been involved in a crash that killed two individuals. Shortly after the crash, police questioned the defendant in the hospital and the defendant admitted to being the driver of the vehicle.[63] The defendant filed a motion to suppress the statement, the Superior Court denied the motion, and this Court affirmed the Superior Court writing that:

> [t]he record in Hammond's case reveals that Hammond was in the emergency room area of the hospital as a result of his medical condition only and not because of any police action. The record does not contain any evidence that Hammond could reasonably believe his freedom of action or movement was restricted during his conversation with [Officer] Walls. There was a legitimate need to identify the occupants of the crash vehicle. Hammond was the only person who was capable of identifying his travelling companions. Walls' questions were brief and concluded after the identities of Hammond's companions had been established.[64]

This Court cited *Laury* and noted that "the police were unable to obtain identification of the crash vehicle's occupants at the scene, because they had been removed by ambulance."[65] Finally, this Court concluded that "Walls' limited questioning of Hammond

---

[61] *Id.*

[62] *Hammond v. State*, 569 A.2d 81, 94 (Del. 1989) (quoting *Laury*, 260 A.2d at 908).

[63] *Id.* at 93.

[64] *Id.* at 94.

[65] *Id.*

14

at the hospital was not a custodial interrogation and that Walls was not required to advise Hammond of his *Miranda* rights."[66]

These cases show that Coello was not in *Miranda* custody. Here, Coello was subject to on-scene questioning "at a very serious accident scene."[67] Law enforcement investigation was of the utmost importance because, as in *Hammond*, "[t]here was a legitimate need to identify the occupants of the crash vehicle."[68] And, if anything, the investigative need was even more compelling in this case. In *Hammond*, the unidentified victims were already deceased and officers questioned the defendant away from the crash scene. Here, the officers questioned Coello at the scene when it was still possible that undiscovered victims needed aid.[69] Thus, applying *Miranda* to this situation would risk affixing the "unwarranted 'constitutional straight-jacket' on law enforcement" that we cautioned against in *Laury*.[70]

---

[66] *Id.*

[67] App. to Opening Br. at A84 (Trial Court Decision 62:9–10).

[68] *Hammond*, 569 A.2d at 94.

[69] It is unclear from the record at what point the officers suspected that a third individual had been in the vehicle during the crash. Early in the officers' questioning, an officer mentions that he thinks there is one other individual in the vehicle. State's Ex. 4 (Body-Worn Camera 2:37). Several minutes later during Coello's questioning, the officers appear to have the third individual's papers and Coello mentions "two people" in addition to himself in the vehicle. State's Ex. 5 (Body-Worn Camera 7:40). The Motion to Suppress and Exclude says that "[b]oth Mr. Coello and another passenger of the vehicle, DeAndre Tolliver, indicated that there had been a third individual in the vehicle. A passport for Jorge was located on scene." App. to Opening Br. at A14 (Motion to Suppress and Exclude). However, the Motion does not specify the timing of exactly when the officers were advised of a possible third occupant in the vehicle. Coello's Opening Brief says that he "mentioned that three people may have been involved[]" and cites to Officer Miller's suppression hearing testimony relating to Coello's questioning seen in State's Ex. 5 (Body-Worn Camera 7:40). Opening Br. at 3 (citing App. to Opening Br. at A40 (Miller Test.)).

[70] *See Laury*, 260 A.2d at 908.

We recognize that on-scene investigatory questioning may become subject to *Miranda* when it rises to a "degree associated with formal arrest"[71] but these circumstances are not present here. We note that Coello was not handcuffed, nor was he otherwise physically restrained. He was not placed under arrest, police did not indicate that he would be placed under arrest, and he freely left without being arrested.[72] Thus, this environment does not "present[] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*."[73]

We do not address whether Coello's limited English skills affect the *Miranda* custody analysis. Coello does not argue to this effect; rather, he argues that his "difficulty comprehending the English language prevented him from waiving his rights with full awareness of the nature of the right abandoned and the consequences of abandoning it."[74] However, as we noted above, Coello was not subject to *Miranda* custody and, therefore, he was not entitled to an administration of *Miranda* warnings. Accordingly, the waiver issue is not applicable to this case and we decline to decide it.[75]

---

[71] *See Berkemer*, 468 U.S. at 440.

[72] Some courts have cited a defendant leaving without being arrested as supporting a lack of *Miranda* custody. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (stressing that defendant left "the police station without hinderance"). However, this factor has also been criticized because what happens later does not have a bearing on what a reasonable person would perceive at the time of the interrogation. 2 Wayne R. LaFave *et al.*, *Criminal Procedure* § 6.6(f) (4th ed. 2023). This factor is not essential to our holding and we do not decide its weight, if any, in a future *Miranda* custody analysis.

[73] *Howes*, 565 U.S. at 509.

[74] Opening Br. at 2.

[75] Because waiver is not applicable to this case, we also need not address Coello's argument to adopt an explicit waiver requirement for waiving *Miranda* rights, even if it had been properly

*C. Case Law From Other Jurisdictions Further Supports Our Conclusion*

We consider cases from other courts persuasive in addressing these facts. Although the application of *Miranda* involves a fact-intensive inquiry, we nonetheless view these cases as pointing toward a lack of *Miranda* custody in the present case.

In accordance with *Miranda*'s concern about the coercion of a "police-dominated atmosphere,"[76] courts have considered the location of the questioning when evaluating *Miranda* custody. "Thus, custody is less likely to be deemed present when the questioning occurred in the presence of the suspect's friends or other third parties, and more likely to be found when the police have removed the suspect from such individuals."[77]

In addition, courts have held that the officers' positioning relative to the suspect and the officers' directions regarding the suspect's movement may be relevant to the *Miranda* custody determination. The Colorado Supreme Court noted, in *People v. Null*, that officers surrounding a suspect weighed in favor of *Miranda* custody, despite a lack of physical restraints.[78] The court wrote that the suspect's

---

presented on appeal. When asked at oral argument, Coello's counsel acknowledged that if this Court finds Coello was not subject to custodial interrogation, the matter is ended:

> Q: [Counsel], if, if we determine that there was no, that your client was not subject to custodial interrogation, that ends the matter, that ends the appeal, if he wasn't?
>
> A: If he wasn't…
>
> Q: … in custody.
>
> A: That's correct.

Oral Argument 10:49–11:07.

[76] *Miranda v. Arizona*, 384 U.S. 436, 456 (1966).

[77] 2 Wayne R. LaFave *et al.*, *Criminal Procedure* § 6.6(f) (4th ed. 2023) (compiling cases).

[78] *People v. Null*, 233 P.3d 670, 677 (Colo. 2010).

freedom of movement was significantly limited during questioning. Although he was not handcuffed and the officers had not drawn their weapons, the officers stood only a few feet from [him]. One officer stood to his left and the other stood to his right, while [the suspect] had his back against the patrol car. Like the defendant in *Taylor*, [the suspect] appears to have been "surrounded" by the patrol car and the officers on either side of him.[79]

But courts have been less willing to find a suspect in *Miranda* custody when officers acted with a safety or medical purpose when directing the suspect's movement. For example, the Connecticut Supreme Court, in *State v. DesLaurier*, declined to find a suspect in *Miranda* custody when an officer told the suspect that "he should lie back and allow the medical personnel to do their job *for his own safety*."[80] And the Colorado Supreme Court, in *People v. Bohler*, declined to find a suspect in *Miranda* custody when officers "asked him to move out of the street and then sit down on the sidewalk."[81] The court reasoned that "[t]he additional direction to sit down was a minor restraint at most[]" and "the officers' pre-handcuffing words and actions indicated welfare measures rather than preparation for an arrest."[82]

---

[79] *Id.*

[80] *State v. DesLaurier*, 646 A.2d 108, 113 (Conn. 1994); *id.* at 112-13 (concluding that the officer acted "solely for a medical purpose and in the interest of public safety[,]" and that the officer's conduct "was necessary and reasonable for insuring the defendant's physical well-being and, under the circumstances, would not be perceived by a reasonable person as creating an inherently coercive, police-dominated environment.").

[81] *People v. Bohler*, 545 P.3d 509, 516 (Colo. 2024).

[82] *Id.*

The reasoning of our sister jurisdictions supports our view of this case. We note that these cases align with our holding in *Laury v. State* that "routine, initial, on-scene investigation by the police[]" does not trigger *Miranda*. [83]

Here, the safety and medical rationale distinguishes this case from *People v. Null* where officer positioning supported *Miranda* custody. In *Null*, "[o]ne officer stood to [Null's] left and the other stood to his right, while Null had his back against the patrol car."[84] The *Null* court found this arrangement meant "Null's freedom of movement was significantly limited during questioning" and considered it as a factor weighing in favor of finding Null in *Miranda* custody.[85] Here, Coello's interrogation similarly occurred with his back to the patrol car and he was similarly facing multiple officers.

But unlike *Null*, there were safety and medical reasons for questioning Coello. Coello had recently suffered serious trauma and leaving him alone risked further injury. True, Coello may have felt pressure to follow the officers' requests, but officer testimony supports the position that a primary goal of the request was to get Coello medical assistance and to protect his welfare.[86] Therefore, this case is more akin to *State v. DesLaurier* and *People v. Bohler* where officer instructions to the defendants did not require *Miranda* warnings because they were for the defendants' own safety.

---

[83] *See Laury v. State*, 260 A.2d 907, 908 (Del. 1969) (initial investigatory function at crime scene does not trigger *Miranda*).

[84] *Null*, 233 P.3d at 677.

[85] *Id.*

[86] App. to Opening Br. at A37 (Miller Test. 15:15–16) ("So I'm worried from a medical standpoint and then from it being his vehicle.").

Finally, we note that the location of the questioning weighs against finding Coello was in *Miranda* custody. Although Coello did not have friends or relatives nearby, his questioning took place outdoors and in full public view. Given the lack of other factors present, we do not view the location as akin to the "police-dominated atmosphere" that animated *Miranda*'s concerns.

We recognize that some circumstances here support a *Miranda* custody finding. Nonetheless, the *Miranda* custody analysis considers that *totality* of the circumstances and the totality here does not add up to *Miranda* custody.

### D. Coello Was Not Subject to Custodial Interrogation for Miranda Purposes Because He Was Not Subject to Miranda Custody

"For *Miranda* to apply, the defendant must be: (i) in custody or in a custodial setting, and (ii) the questioning must rise to the level of an interrogation."[87] As we concluded above, Coello was not subject to *Miranda* custody. Because he was not subject to *Miranda* custody, he was not subject to custodial interrogation.[88]

---

[87] *Loper v. State*, 8 A.3d 1169, 1176 (Del. 2010) (citing *McAllister v. State*, 807 A.2d 1119, 1125–26 (Del. 2002)).

[88] The United States Supreme Court has held that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The United States Supreme Court has also held that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (emphasis added). Thus, our finding that he was not in *Miranda* custody precludes finding that he was subject to custodial interrogation. *See also Hammond v. State*, 569 A.2d 81, 93 (Del. 1989) (noting that "[t]he *Miranda* procedural safeguards were expressly limited to interrogation in a custodial setting.").

## V. CONCLUSION

For the forgoing reasons, we conclude that Coello was not in *Miranda* custody, that he was not subject to custodial interrogation, that officers did not need to obtain a *Miranda* waiver, and that, accordingly, the Superior Court did not err in denying his motion to suppress. Accordingly, we **AFFIRM** Coello's conviction.